**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

---

EMMALEE FORRESTER, KATELYN
ESTEPP, VICTORIA LANGLOIS,
JUSTYSE PERRY, TAYLOR SEYMOUR,          Case No.:
MADISON BEVAK, HOLLY MESSERSCHMITT,
ALYSSA CRAIGIE, and MEGAN HADDAD
                                        Hon.
Plaintiffs,

vs.


CLARENCEVILLE SCHOOL DISTRICT,
PAUL SHEPICH, TROY NELSON, ALAN KANTOR,
DAVID BERGERON, RENEE VALENTINE
TROY SCHOOL DISTRICT
AND JASON DEBANDT,

        Jointly and Severally,

        Defendants.

---

Lisa M. Esser (P70628)
Elaina S. Bailey (P82461)
SOMMERS SCHWARTZ, P.C.
Attorneys for Plaintiffs
One Towne Square, Ste. 1700
Southfield, MI 48076
T: (248) 355-0300
F: (248) 936-4015
lesser@sommerspc.com
ebailey@sommerspc.com

---

## <u>COMPLAINT AND JURY DEMAND</u>

NOW COME Plaintiffs, EMMALEE FORRESTER, KATELYN ESTEPP, VICTORIA

LANGLOIS, JUSTYSE PERRY, TAYLOR SEYMOUR, MADISON BEVAK, HOLLY

MESSERSCHMITT, ALYSSA CRAIGIE ("Clarenceville Plaintiffs") and MEGAN HADDAD

1

("Troy Plaintiff"), by and through their attorneys, Lisa Esser and Elaina Bailey of Sommers Schwartz, P.C., and for their Complaint against the Defendants state as follows:

## INTRODUCTORY STATEMENTS

1.      This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiffs as a result of acts and omissions of Defendants Clarenceville School District, Paul Shepich, Troy Nelson, Alan Kantor, David Bergeron and Renee Valentine (hereinafter the "Clarenceville Defendants"), and Troy School District and their respective employees, agents, and/or representatives, relating to sexual assault, battery, molestation, harassment, and discrimination by Defendant Jason Debandt (hereinafter "Debandt") against Plaintiffs.

2.      Upon information and belief, in and around 2004/2005, Defendant Debandt was the employee and/or actual or ostensible agent of Defendant Troy School District, working with and providing instruction to students at Troy Athens High School, a school in the Troy School District.

3.      Upon information and belief, since around 2008/2009 and up through 2018/2019, Defendant Debandt was employed by Defendant Clarenceville School District as a teacher within Clarenceville School District, to provide guidance and education to students at the Clarenceville High School and Clarenceville Middle School.

4.      Upon information and belief, Defendant Debandt used his position of authority and trust to regularly and systematically sexually assault, batter, molest, and harass female students over the course of his teaching career in his capacity as an employee, agent, and/or representative of Defendant Clarenceville School District and/or Defendant Troy School District, for his own personal self-gratification.

5.      Despite being informed of Defendant Debandt's sexual assault, battery, molestation, and harassment, Clarenceville Defendants failed to take appropriate action to prevent Defendant Debandt from sexually molesting, abusing, and harassing female students in the Clarenceville School District over the course of his career in his capacity as a teacher and employee, agent, and/or representative of Defendant Clarenceville School District.

6.      Despite being informed of Defendant Debandt's sexual assault, battery, molestation, and harassment, employees and/or agents of Defendant Troy School District failed to take appropriate action to stop Defendant Debandt from sexually molesting, abusing, and harassing the Troy Plaintiff, while he was an employee or agent of Defendant Troy School District.

7.      As a direct and proximate result of the Clarenceville Defendants', Defendant Troy School District's and Defendant Debandt's actions and/or inactions, Plaintiffs were subjected to multiple and repeated acts of sexual harassment, assault and molestation, causing them to suffer and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

## JURISDICTION AND VENUE

8.      Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

9.      This action is brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et seq.*, as more fully set forth herein.

10.     This action also seeks to redress the deprivation of Plaintiffs' rights secured by the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

11.     This Court has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1331 in that the controversy arises under the Constitution, laws, and treaties of the United States.

12.     Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which grants district courts original jurisdiction over any civil action authorized by law to be commenced by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; or any action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

13.     Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

14.     Plaintiffs' claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, 20 U.S.C. § 1681, *et seq.,* 42 U.S.C. § 18116, and under Michigan law.

15.  The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims arose in this judicial district, in Wayne, Oakland and Macomb Counties.

17.     Plaintiffs' Complaint is timely filed within the applicable statute of limitations and under M.C.L. § 600.6431(3).

## PARTIES AND KEY INDIVIDUALS

18.     Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

19.     Plaintiff Emmalee Forrester is an adult female and is a resident of the State of Michigan.  She was a minor at all times she was sexually assaulted, abused, molested and/or harassed by Defendant Debandt.

20.     At the times of the events complained of herein, Plaintiff Emmalee Forrester was a student attending a high school and middle school within the Defendant Clarenceville School District, specifically Clarenceville High School and Clarenceville Middle School.

21.     Plaintiff Katelyn Estepp is an adult female and is a resident of the State of Michigan.  She was a minor for most of the time she was sexually assaulted, abused, molested and/or harassed by Defendant Debandt.

22.     At the time of the events complained of herein, Plaintiff Katelyn Estepp was a student attending a high school within the Defendant Clarenceville School District, specifically Clarenceville High School.

23.     Plaintiff Victoria Langlois is an adult female and is a resident of the State of Michigan.  She was a minor for most of the time she was sexually assaulted, abused,

molested and/or harassed by Defendant Debandt.

24.     At the time of the events complained of herein, Plaintiff Victoria Langlois was a student attending a high school within the Defendant Clarenceville School District, specifically Clarenceville High School.

25.     Plaintiff Justyse Perry is an adult female and is a resident of the State of Michigan.  She was a minor when she was sexually assaulted, abused, molested and/or harassed by Defendant Debandt.

26.     At the time of the events complained of herein, Plaintiff Justyse Perry was a student attending a high school and middle school within the Defendant Clarenceville School District, specifically Clarenceville High School and Clarenceville Middle School.

27.     Plaintiff Taylor Seymour is an adult female and is a resident of the State of Michigan.  She was a minor when she was sexually assaulted, abused, molested and/or harassed by Defendant Debandt.

28.     At the time of the events complained of herein, Plaintiff Taylor Seymour was a student attending a high school within the Defendant Clarenceville School District, specifically Clarenceville High School.

29.     Plaintiff Madison Bevak is an adult female and is a resident of the State of Michigan.  She was a minor for most of the time she was sexually assaulted, abused, molested and/or harassed by Defendant Debandt.

30.     At the time of the events complained of herein, Plaintiff Madison Bevak was a student attending a high school and middle school within the Defendant Clarenceville School District, specifically Clarenceville High School and Clarenceville Middle School.

31.     Plaintiff Holly Messerschmitt is an adult female and is a resident of the State of Michigan.  She was a minor when she was sexually assaulted, abused, molested and/or harassed by Defendant Debandt.

32.     At the time of the events complained of herein, Plaintiff Holly Messerschmitt was a student attending a high school and middle school within the Defendant Clarenceville School District, specifically Clarenceville High School and Clarenceville Middle School.

33.     Plaintiff Alyssa Craigie is an adult female and is a resident of the State of Michigan.  She was a minor when she was sexually assaulted, abused, molested and/or harassed by Defendant Debandt.

34.     At the time of the events complained of herein, Plaintiff Alyssa Craigie was a student attending a high school and middle school within the Defendant Clarenceville School District, specifically Clarenceville High School and Clarenceville Middle School.

35.     Plaintiff Megan Haddad is an adult female and is a resident of the State of Florida.  She was a minor when she was sexually assaulted, abused, molested and/or harassed by Defendant Debandt.

36.     At all times of the events complained of herein, Plaintiff Megan Haddad was a student attending a high school within the Defendant Troy School District, specifically Troy Athens High School.

37.     Defendant Jason Debandt is a teacher in the State of Michigan, a Michigan resident at the time of the events set forth herein, and upon information and belief currently resides in the City of Berkley, County of Oakland, State of Michigan.

38.     Defendant Clarenceville School District is and was, at all times pertinent hereto, a public educational institution located in the County of Wayne, City of Livonia, State of Michigan, organized and existing under laws of the State of Michigan.  Clarenceville High School is a school that is part of the Clarenceville School District. Clarenceville Middle School is a school that is part of the Clarenceville School District.

39.     At all material times, Defendant Paul Shepich ("Superintendent Shepich"), in his official and individual capacities, worked within the County of Wayne, City of Livonia, State of Michigan.

40.     During all material times, Superintendent Shepich was an agent and/or employee of Defendant Clarenceville School District, acting as Superintendent of the Clarenceville School District, and acting or failing to act within the scope, course, and authority of his employment and his employer, thereby making Clarenceville School District vicariously liable for his action and/or inactions by reason of the doctrine of respondeat superior.

41.     At all material times, Defendant Troy Nelson ("Principal Nelson"), in his official and individual capacities, worked within the County of Wayne, City of Livonia, State of Michigan.

42.     During all material times, Principal Nelson was an agent and/or employee of Defendant Clarenceville School District, acting as Principal at the Clarenceville High School, and acting or failing to act within the scope, course, and authority of his employment and his employer, thereby making Clarenceville School District vicariously liable for his action and/or inactions by reason of the doctrine of respondeat superior.

43.    Since at least May 2015, Defendant Renee Valentine, (Assistant Superintendent and Title IX/Civil Rights Coordinator) (hereinafter "Valentine") in her official and individual capacities, worked within the County of Wayne, City of Livonia, State of Michigan.

44.    At all material times, Defendant Valentine was an agent and/or employee of Defendant Clarenceville School District, acting as an Assistant Superintendent and Title IX Coordinator, and acting or failing to act within the scope, course, and authority of her employment and her employer, thereby making Clarenceville School District vicariously liable for his action and/or inactions by reason of the doctrine of respondeat superior.

45.    Since at least May 2015, Defendant David Bergeron, (Assistant Superintendent and Title IX/Civil Rights Coordinator) (hereinafter "Bergeron") in his official and individual capacities, worked within the County of Wayne, City of Livonia, State of Michigan.

46.    At all material times, Defendant Bergeron was an agent and/or employee of Defendant Clarenceville School District, acting as an Assistant Superintendent and Title IX Coordinator, and acting or failing to act within the scope, course, and authority of his employment and his employer, thereby making Clarenceville School District vicariously liable for his action and/or inactions by reason of the doctrine of respondeat superior.

47.    At all material times, Defendant Assistant Principal Alan Kantor ("Assistant Principal Kantor"), in his official and individual capacities, worked in the County of Wayne, City of Livonia, State of Michigan.

48.     At all material times, Assistant Principal Kantor was an agent and/or employee of Defendant Clarenceville School District, acting as Assistant Principal in the Clarenceville High School, and acting or failing to act within the scope, course, and authority of his/her employment and his/her employer, thereby making Clarenceville School District vicariously liable for his action and/or inactions by reason of the doctrine of respondent superior. Assistant Principal Kantor is now the Principal of the Clarenceville Middle School.

49.     Clarenceville School District receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

50.     From as early as 2008 through 2018/2019, Defendant Debandt was an employee of Defendant Clarenceville School District.

51.     The Clarenceville Defendants are responsible for the negligent acts or omissions of Defendant Debandt while employed by Clarenceville School District and in his capacity as a teacher/employee.

52.     Within the course and scope of his employment with Defendant Clarenceville School District, Defendant Debandt relied on his apparent authority or was aided in accomplishing the sexual assault, molestation, and/or sexual harassment of minor female students because of the relationship that existed between Defendant Debandt and the Clarenceville Defendants.

53.     A special, confidential, and fiduciary relationship was created and existed at all times pertinent hereto between the Clarenceville School District and Defendant Debandt, as described herein this Complaint, resulting in the Clarenceville School District

10

owing Plaintiffs a duty to prevent them from experiencing Defendant Debandt's sexual harassment, sexual assault, battery, molestation, and/or discrimination.

54.     The Clarenceville School District is vicariously liable for the actions of Defendant Debandt, as described above, that were performed during the course of his employment, agency, and/or representation with the Clarenceville School District and while he had unfettered access to young female students at Clarenceville Middle School and Clarenceville High School.

55.     The Clarenceville School District, by and through its agents and employees, including the individually named Defendants, had actual and/or constructive knowledge of Defendant Debandt's propensity for sexually assaulting, battering, molesting, and harassing females on several occasions in the course of the teacher-student relationship and during the course of his employment, agency, and/or representation with the Clarenceville School District, as described herein this Complaint, and took no action to prevent or end such conduct.

56.     It was reasonably foreseeable that Defendant Debandt would continue to sexually assault, batter, molest, and harass minor female students in the course of his teacher-student relationships and during the course of his employment, agency, and/or representation with the Clarenceville School District.

57.     Defendant Troy School District is and was, at all times pertinent hereto, a public educational institution located in the County of Oakland, City of Troy, State of Michigan, organized and existing under laws of the State of Michigan.  Troy Athens High School is a school that is part of the Troy School District.

58.     At all material times, Frank Pitts, Christi Manfredi, and Mollie Debandt were employed by and/or were the actual and/or ostensible agents of Defendant Troy School District, at Troy Athens High School, and acted or failed to act within the scope, course and authority of their employment with the Troy School District, thereby making Defendant Troy School District vicariously liability for their actions and/or inactions by way of the doctrine of respondeat superior.

59.     In and around 2004/2005, Defendant Debandt was brought in by the Troy School District to work at Troy Athens High School with theatre students attending that High School.

60.     Upon information and belief, in and around 2004/2005, Defendant Debandt was the actual and/or ostensible agent, servant, and/or employee of Defendant Troy School District, thereby making Defendant Troy School District vicariously liable for the actions of Defendant Debandt.

61.     During such time, Defendant Troy School District had the power and/or duty to supervise Defendant Debandt and was responsible for the conduct of Defendant Debandt.

62.     While working with the theatre students at Troy Athens High School, Defendant Debandt relied on his apparent authority or was aided in accomplishing the sexual assault, molestation, and/or sexual harassment of a minor female student because of the agency and/or employment relationship that existed between Defendant Debandt and the Troy School District.

63.     Multiple employees, agents, and/or representatives of Defendant Troy School District, including, but not limited to, Frank Pitts, Christi Manfredi, and Mollie

12

Debandt, had actual and/or constructive knowledge that Defendant Debandt was sexually assaulting, molesting, and/or sexually harassing at least one minor female student, and took no action to report the conduct. Therefore, it was foreseeable that Defendant Debandt would continue to commit such crimes and wrongdoing.

64.     By not reporting the conduct and/or removing Defendant Debandt from his position of apparent authority, Defendant Troy School District, by and through its agents and employees, including, but not limited to Frank Pitts, Christi Manfredi, and Mollie Debandt, allowed Defendant Debandt to continue to sexually assault, molest, and/or sexually harass a minor female student within the Troy School District.

65.     Troy School District receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

## **COMMON FACTUAL ALLEGATIONS**

66.     Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

67.     Defendant Jason Debandt was a choir and theatre teacher at the Clarenceville Middle School and Clarenceville High School as early as 2008 and through 2018/2019.

68.     Clarenceville Middle School is a public middle school that offers classes for students in the 6th through 8th grades.

69.     Clarenceville High School is a public high school that offers classes for students in the 9th through 12th grades.

70.     Defendant Debandt began grooming young girls while they were in middle school.  Defendant Debandt was known to single out certain minor female students for

extra attention, privileges and favors, starting in middle school and proceeding into high school.

71.     Many of the girls that he singled out were going through a traumatic time in their life. For example, many of the girls he preyed upon were experiencing the death of a parent or loved one, a divorce in the home, or had tumultuous home lives.

72.     Defendant Debandt was known to encourage these female students to spend time in his private school office between breaks, at lunch, and during other hours of the day when these students were supposed to be in other regularly scheduled classes. At all relevant times to this Complaint, upon information and belief, no other teacher in Defendant Clarenceville School District did this.

73.     Upon information and belief, other teachers in the Clarenceville School Districts confronted Defendant Debandt about keeping these girls from their regularly scheduled classes.

74.     Upon information and belief, employees at Clarenceville Middle School recall Defendant Debandt often having young girls sit on his lap.

75.     Defendant Debandt would give the girls treats. He would do this to make them feel special and foster a closeness with them. He would also buy them gifts when he visited places, like Disney World, and buy them birthday gifts.

76.     Defendant Debandt would also offer to pay some of these girls for them to clean his house. Once the girls became accustomed to coming to his home to clean, he would offer them alcohol and make sexual advances towards them.

77.     Defendant Debandt would also endear himself to his students' families, gaining their trusts, most assuredly in an attempt to make them feel more comfortable

with him spending so much time with their daughters.

78.     Defendant Debandt's roommate would often come home to see "kids" in the house and alcohol being supplied.  One morning when Defendant Debandt's roommate was leaving early for work, a young girl opened Debandt's bedroom door and quickly closed it after being caught.

79.     Defendant Debandt would encourage his female students to share their personal cell phone numbers with him and vice versa, and to exchange messages via Telegram and Snapchat, applications which allowed for the quick deletion of messages exchanged.

80.     Defendant Debandt would share naked pictures of himself, including pictures of his buttocks, penis and scrotum, as well as videos of himself masturbating.

81.     Defendant Debandt would encourage his favored female students to send naked pictures to him.

82.     Throughout his employment with the Clarenceville School District, Defendant Debandt routinely sexually assaulted, abused and harassed female students throughout the school building, and often in his office, classroom, and in the catacombs of the theatre/choir area.

83.     Defendant Debandt would often stay late at night in the Clarenceville High School choir room catacombs, alone with female students.

84.     While in the choir rooms and in the presence of his special female students, Defendant Debandt would use his penis to play keys on the piano. He was also frequently observed adjusting an erection in his pants.

85.    In and around 2004/2005, Defendant Debandt was brought in by Troy Athens High School to work with theatre students in the school musical Godspell.

86.    While working with the theatre students at Troy Athens High School, he began sexually assaulting, molesting and harassing a female student that he was supervising and instructing in said musical.

87.    He carried on a sexual relationship with that female student for several months.

88.    Upon information and belief, the sexual relationship was widely known by employees and agents of Defendant Troy School District, and working at Troy Athens High School.

89.    Upon information and belief, prior to 2005, Defendant Debandt was working at Madison High School.

90.    Upon information and belief, Defendant Debandt had engaged in sexual grooming behavior with his female students at Madison High School as well.

91.    Upon information and belief, female students at Clarenceville High School reported the sexual assault, molestation, and/or harassment that they experienced from Defendant Debandt on multiple occasions, including Plaintiff Taylor Seymour in 2010, another Clarenceville female student in 2015 or 2016, Plaintiff Emmalee Forrester in 2016, and Plaintiff Emmalee Forrester and Plaintiff Justyse Perry, as supported by Plaintiff Alyssa Craigie, in 2018.

92.    Upon information and belief, in and around 2018/2019, Defendant Jason Debandt left the Clarenceville School District, despite the fact that he would have received a significant increase in his salary going into his 11th year with the District.

93.     Upon information and belief, after leaving Clarenceville School District, Defendant Debandt obtained employment with the Farmington School District, at North Farmington High School, and Power Middle School.

94.     Upon information and belief, Clarenceville School District did not report the allegations of sexual assault and harassment to the Farmington School District and/or provided Defendant Debandt with a letter of recommendation for him to take to the Farmington School District.

95.     Upon information and belief, Defendant Debandt started grooming female students at North Farmington High School in 2019-2020.

96.     On or about August 26, 2020, Defendant Debandt was placed on paid administrative leave secondary to allegations made by the Clarenceville Plaintiffs in this matter.

97.     Upon information and belief, Defendant Debandt is currently being investigated by several Metro Detroit law enforcement agencies for the assaults, harassment and molestation set forth in this Complaint.

## ALLEGATIONS SPECIFIC TO EACH PLAINTIFF

### A. EMMALEE FORRESTER

98.     Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

99.     Plaintiff Emmalee Forrester ("Emmalee") first met Defendant Debandt at Clarenceville Middle School when he was her choir teacher, she was 13 years old at the time.

100.   In and around 2014, Emmalee entered Clarenceville High School as a freshman. That year, Emmalee's father passed away and she struggled emotionally with the loss.

101.   About the same time, Defendant Debandt, now her choir teacher at Clarenceville High School, began sexually grooming her.

102.   Defendant Debandt would show her favoritism and would bring her treats, like food and coffee.

103.   Defendant Debandt would ask Emmalee to sit in his office during his choir class, during passing times, and even when she was supposed to be in her other classes. He would write her passes excusing her from those classes.

104.   Defendant Debandt was in constant communication with Emmalee, both in and out of school, giving her his cell phone number and obtaining hers. He would send Emmalee Snapchat messages and instructed her to download the Telegram application so that he could privately message her with messages that he could set to delete.

105.   Defendant Debandt would often drive Emmalee home from school and would take her places like restaurants.

106.   During Emmalee's sophomore year of high school, Defendant Debandt began sexually harassing, assaulting and molesting her.

107.   Most of the sexual harassment, assaults, and molestation took place in either his private office, in the choir room, or in the auditorium.

108.   While at Clarenceville High School, Defendant Debandt would sexually assault and/or harass Emmalee on a daily basis, including, but not limited to:

      a)    Making sexually explicit comments, including asking her to visit him privately in an hotel room during a school trip;

18

b)   Looking down her shirt at her breasts;

c)   Making sexually explicit comments about her breasts;

d)   Commenting on her body, the way her clothes looked on her;

e)   Running personal errands for him, including fetching condoms for him;

f)   Frequent brushing of his groin up against her body and his hands on her butt;

g)   Frequently sitting next to her in the car or auditorium and rubbing her inner thighs;

h)   Frequently hand holding and sexually rubbing her arms and lower back; and

i)   Frequently forming, touching and adjusting erections in his pants in her presence.

109.   If Emmalee ignored or otherwise did not respond favorably to Defendant Debandt's sexual advancements and sexual comments, he would shun her and create an intimidating, hostile, or offensive learning environment, thus interfering with her ability to participate in or benefit from her theatre/choir activities.

110.   During Emmalee's junior year of high school, around 2016/2017, she was pulled from a class by Defendant Principal Nelson and a counselor and taken to the school office.

111.   While in the office, Principal Nelson stated that he received an anonymous letter instructing him to "check on" Emmalee's and Defendant Debandt's "relationship."

112.   Emmalee reported to Principal Nelson that Defendant Debandt sexual assaulted, molested, and/or harassed her on a daily basis.

113.   Principal Nelson took notes as she reported and he ensured her that he would do a thorough investigation.

114.    Directly after reporting Debandt's sexual assault, molestation, and/or harassment to Principal Nelson, Emmalee quit the choir program.

115.    Emmalee never heard from Principal Nelson or the administration about the findings of any investigation after she reported the sexual assault, molestation, and/or harassment.

116.    The next year, in 2018, Emmalee again, along with Plaintiff Justyse Perry, reported the abuse to Clarenceville High School Teacher, Anthony Salcicciolii.

117.    Anthony Salcicciolii immediately took Emmalee and Justyse to administration, including to Principal Nelson and Assistant Principal Kantor.

118.    Upon information and belief, Principal Nelson and Assistant Principal Kantor told Anthony Salcicciolii that they would "do all they could to get the legal ball rolling."  Mr. Salcicciolii asked about contacting law enforcement and volunteered to get that process started, but Principal Nelson and Assistant Principal Kantor instructed him not to and otherwise remove himself from the matter.

119.    Upon information and belief, Mr. Salcicciolii was given assurances by Principal Nelson and Assistant Principal Kantor that they would handle the matter henceforth and that he should step back and let them take the lead.

120.    Principal Nelson and Assistant Principal Kantor interviewed Emmalee and afterward instructed her not to tell anyone because they did not want her "to look bad."

121.    Emmalee then told her mother and grandmother about how she was interviewed by Principal Nelson and Assistant Principal Kantor.

122.    Emmalee's mother went up to the school and inquired about the situation.

123.    Principal Nelson ensured Emmalee's mother that they were looking into the situation and advised her not to contact the police, but be prepared for the authorities to contact her.

124.    Emmalee and her mother never heard from the police.

125.    As far as Emmalee is aware, after the 2018 report, no investigation was done, no action was taken, neither Child Protective Services nor law enforcement was contacted, and no restrictions were placed on Defendant Debandt.  She was led to believe that what she was experiencing was normal and not inappropriate in any way, shape or form.

## B.  KATELYN ESTEPP

126.    Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

127.    Plaintiff Katelyn Estepp ("Katelyn") first met Defendant Debandt in 2009, He was Katelyn's choir and theatre arts teacher all four years that she attended Clarenceville High School.

128.    Defendant Debandt began showing her extra attention as soon as he met her.  During class, he would angle a mirror on his office door to where she was sitting and motion with his hand for her to join him in his office. He would regularly invite her to sit inside his office during class, passing time, and even when she was scheduled to be in her other classes.

129.    Defendant Debandt would bring Katelyn treats, like food and coffee, and buy her clothing. On one occasion, Defendant Debandt bought her form fitting jeans and

yoga pants which he requested that she wear to school. He then commented that he was pleased by the way that her butt looked in the pants.

130.   Defendant Debandt gave Katelyn his phone number and he would text her on a daily basis. He also instructed her to download and use the Telegram application to talk to him. The Telegram application had a feature where the sender of the message could set a timer to delete the message for "privacy."

131.   Defendant Debandt's daily messages to Katelyn became increasingly inappropriate and sexual in nature. One night, after play practice, when Katelyn was 16 years old, Defendant Debandt texted her and told her that he "was in love with her."

132.   One day during Katelyn's junior year of high school, Defendant Debandt went to the bathroom in the music wing of the high school and took a picture of his exposed buttocks in the mirror. Debandt sent her the picture of his bare bottom to her while he was in the restroom and texted "we could do things in here".

133.   At Clarenceville High School, Defendant Debandt would touch her as often as possible.  He would set his head on her shoulder, grab her pinky finger with his pinky finger, grab and rub the inside of her thighs.

134.   During her senior year at Clarenceville High School, Defendant Debandt would persistently request that Katelyn and her friends come over to his house. Once at his house, he would provide Katelyn the other minor students with alcohol and tell them to stay over and sleep in his bed. Debandt would sexually assault and molest Katelyn while she was at his house. On multiple occasions, while she was a minor and a student at Clarenceville High School he performed oral sex on her, groped her, and kissed her.

135.   While at Clarenceville High School, Debandt would sexually assault and/or harass Katelyn on a daily basis, including, but not limited to:

   a)   Making sexually explicit comments;

   b)   Commenting on her body, the way her clothes looked on her, and how it made him feel;

   c)   Constant sending of explicit sexual communications;

   d)   Frequent brushing against her body with either his hand and/or groin;

   e)   Frequent sexual touching of her thighs and butt;

   f)   Frequently touching and adjusting erections in his pants in front of her; and

   g)   On multiple occasions performing oral sex on her, groping her, and kissing her when she was a minor.

136.   On several occasions, Superintendent Shepich, Principal Nelson, and the vice principal of Clarenceville High School, came into Debandt's office and saw Katelyn and other female students sitting in his office and did nothing to inquire about why they were segregated from their peers and in there alone.

137.   Defendant Debandt regularly sexually assaulted, molested, and/or harassed Katelyn while at Clarenceville High School in the choir room, Defendant Debandt's office, and in the auditorium without concealing his actions. Other teachers and administrator's witnessed Debandt's actions and never once intervened or indicated that what she was experiencing was abnormal or inappropriate in any way, shape or form.

## C. VICTORIA LANGLOIS

138.   Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

23

139.   Plaintiff Victoria Langlois ("Victoria") attended Clarenceville High School during her junior year of high school, in the 2014-2015 school year.

140.   Victoria first met Defendant Debandt when she inquired about their choir program. Defendant Debandt told her that there was not space for her in choir, but he encouraged her to participate in the school play which he was directing. At his suggestion, Victoria did become active in the play as part of the tech crew.

141.   Victoria experienced a troubled childhood. Defendant Debandt knew this and used it to his advantage.

142.   At some point before the production, Victoria missed two weeks of school due to injuries she sustained from a very serious car accident. One evening, Defendant Debandt texted Victoria and asked why she had not been at school. Victoria appreciated that he reached out to her because she thought that it showed that he cared about her. She told Defendant Debandt that she was suffering from migraines and was not able to attend school and, therefore, could not participate in play practice. Defendant Debandt told her that she did not need to go to her classes to participate in play practice. He told her that if she stayed hidden from the other school teachers and the school administrators, that he'd allow her to come to play practice. At his urging, Victoria did just that.

143.   During play practice, Debandt would encourage Victoria to sit in the front row of the auditorium with her and critique the play. While he sat next to her, Debandt would frequently rub her inner thighs and put his head on her shoulder. Debandt did not attempt to conceal his actions when he sexually touched her in this way. Victoria thought to herself, "what is happening?" but no one reacted. She was led to believe that what she was experiencing was normal.

144.    Defendant Debandt would regularly buy Victoria treats, like donuts, coffee, and lunch. He would also bring her back souvenirs from his travels and bought her birthday gifts.

145.    Defendant Debandt encouraged Victoria to add him on Snapchat and to download the Telegram application. From then on, the daily constant communication began. Defendant Debandt became increasingly sexual in his communications to her.

146.    While Victoria was a minor student at Clarenceville High School, Defendant Debandt would regularly send her explicit sexual communications. He would also persistently solicit naked photos of Victoria from her.

147.    Defendant Debandt continued grooming Victoria by making her promises that they "would be together" when she graduated high school. He made her promises that he would take her on vacations, including the promise to take her to Disney World, and promising to marry her.

148.    While at Clarenceville High School, Defendant Debandt would sexually assault and/or harass Victoria on a daily basis, including, but not limited to:

    a)    Constant sending of sexually explicit communications;

    b)    Making sexually explicit comments;

    c)    Frequent brushing against her body with either his hand and/or groin;

    d)    Frequent sexual touching of her thighs and butt and holding her hand; and

    e)    Frequently touching and adjusting erections in his pants in front of her.

149.    Defendant Debandt regularly sexually assaulted, molested, and/or harassed Victoria while at Clarenceville High School in the choir room, Debandt's office,

and in the auditorium without concealing his actions. Other teachers and administrator's witnessed Debandt's actions and never once intervened or indicated that what she was experiencing was abnormal or inappropriate in any way, shape or form.

### D. JUSTYSE PERRY

150.    Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

151.    Plaintiff Justyse Perry ("Justyse") was a student in the Defendant Clarenceville School District, attending both the Clarenceville Middle School and Clarenceville High School.

152.    Justyse first met Defendant Debandt while attending the Clarenceville Middle School sometime in and around approximately 2012. Defendant Debandt was her teacher, and she was his student.

153.    When Justyse was in eighth grade, her grandfather passed away.  She was upset.  This is when Defendant Debandt took to consoling her and providing her special attention, compliments, and special privileges.  She was 13 years old. These favors continued into high school and escalated.

154.    Defendant Debandt was Justyse's choir and theater arts teacher at Clarenceville High School through 2018.

155.    Defendant Debandt would encourage her to spend time with him privately in his school office during breaks, lunch and during regularly scheduled classes.

156.    While at Clarenceville High School, Defendant Debandt would sexually assault and/or harass Justyse on a weekly basis, including, but not limited to:

    a)    Making sexually explicit comments, including asking her to visit him privately in an hotel room during a school trip;

26

b)      Looking down her shirt at her breasts;

c)      Commenting on her body, the way her clothes looked on her;

d)      Running personal errands for him, including fetching condoms for him;

e)      Frequent sexual touching and brushing his groin up against her body;

f)      Playing the piano using his penis in front of the choir class; and

g)      Frequently forming, touching and adjusting erections in his pants in her presence.

157.    During her sophomore year of high school, Justyse went to Defendant Debandt at school regarding a sexual assault she had recently experienced by another individual.  Defendant Debandt purchased a pregnancy test for Justyse and had her take it with him. He asked Justyse to tell him the details of her assault.  Upon doing so, Defendant Debandt became sexually aroused, developing an erection.   Defendant Debandt did not report the assault or advise Justyse to do anything about it.

158.    If Justyse ignored or otherwise did not respond favorably to Defendant Debandt's sexual advancements and sexual comments, he would shun her and create an intimidating, hostile, or offensive learning environment, thus interfering with her ability to participate in or benefit from her theatre/choir activities.

159.    In approximately 2016/2017, Justyse made a report of Debandt's sexual assaults and harassment to Principal Nelson and Vice Principal Alan Kantor.  Plaintiff Emmalee Forester was also present.  As far as Justyse is aware, no investigation was done, no action was taken, neither Child Protective Services nor law enforcement was contacted, and no restrictions were placed on Defendant Debandt.  Her parents were not

contacted.  Rather, she was led to believe that what she was experiencing was normal and not inappropriate in any way, shape or form.

160.   In approximately 2018, Justyse and Emmalee made another report of Debandt's sexual assaults and harassment to Clarenceville School District teacher Anthony Salciccioli.   Mr. Salciccioli immediately took Justyse and Emmalee to the Clarenceville High School office to report the behavior to Principal Nelson and Vice Principal Kantor.

161.   As far as Justyse is aware, after the 2018 report, no investigation was done, no action was taken, neither Child Protective Services nor law enforcement was contacted, and no restrictions were placed on Defendant Debandt.  If anything was done in response to the report, that information was not shared with her. She was led to believe that what she was experiencing was normal and not inappropriate in any way, shape or form.

### E.  TAYLOR SEYMOUR

162.   Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

163.   Plaintiff Taylor Seymour ("Taylor") was a student in the Defendant Clarenceville School District, attending the Clarenceville High School.

164.   Taylor first met Defendant Debandt while attending the Clarenceville High School sometime in and around approximately 2008/2009. Defendant Debandt was her teacher, and she was his student through 2010.

165.   Defendant Debandt would encourage Taylor to spend time with him privately in his school office, often shutting and locking the door behind them.  Taylor

28

recalls one time Defendant Debandt locking her in the office with him and telling her he won't bite her too hard.

166.   While at Clarenceville High School, Defendant Debandt would sexually assault and/or harass Taylor on a daily basis, including, but not limited to:

a)    Making sexually explicit comments;

b)    Constantly staring at her breasts;

c)    Commenting on her body, the way her clothes looked on her, and how it made him feel;

d)    Frequent sexual touching of her thighs, low back and waist, and brushing his groin up against her backside; and

e)    Frequently touching and adjusting erections in his pants in front of her.

167.   If Taylor shunned or otherwise did not respond favorably to Defendant Debandt's sexual advancements and sexual comments, he would shun her and create an intimidating, hostile, or offensive learning environment, thus interfering with her ability to participate in or benefit from her theatre/choir activities.

168.   In approximately 2010, Taylor reported the vulgar and sexually explicit comments, the erections and frequent touching of his penis to Principal Nelson.   In response to her complaints, Principal Nelson told her he would look into it but men "adjust themselves" and sometimes girls can have "crushes" on older men.   As far as Taylor was aware, no investigation was done, no action was taken, neither Child Protective Services nor law enforcement was contacted, and no restrictions were placed on Defendant Debandt.   Her parents were not contacted.   Rather, Taylor was forced to complete her credit hour in Defendant Debandt's class in order to graduate.   Taylor was led to believe

that what she was experiencing was normal and not inappropriate in any way, shape or form.

### F.  MADISON BEVAK

169.    Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

170.    In 2008, Plaintiff Madison Bevak ("Madison") first met Defendant Debandt, when she was 10 years old and a sixth grader at Clarenceville Middle School. He directed a musical that she participated in and was her older sister's teacher at Clarenceville High School.

171.    In 2011, when Madison got to Clarenceville High School, Defendant Debandt singled Madison out as a "favorite" right away.   Madison had classes with Defendant Debandt all four years at Clarenceville High School and graduated in 2015.

172.    Defendant Debandt encouraged Madison to download the Telegram application on her cell phone and he would regularly message her on the application.

173.    Defendant Debandt would bring her treats and give her special privileges. For example, Defendant Debandt would bring her specialty coffees, donuts, and lunches. He would also allow her not to take a final exam in his classroom in exchange for her assistance with filing and other related tasks in his office, like cleaning his office.

174.    Defendant Debandt would ask Madison to sit in his office with him during class, during passing time, and during her other scheduled classes.  He would write her passes to excuse her from her other classes on a regular basis.  On at least one occasion, Defendant Debandt encouraged her to take a nap on the couch in his office.

175.   Defendant Debandt would make sexually explicit comments to Madison on a daily basis.  He would say, "looking good, Squatch," calling her by a pet name that he gave to her.  He would also make comments about how she was "developing" and how he liked the way her clothes fit her.

176.   Defendant Debandt would also talk about sexually explicit things in front of Madison on a regular basis.  He would often make comments about his own sex life and would make sexually explicit comments about other girls to her often calling other girls "hot."

177.   Defendant Debandt would also ask Madison to sit with him in the front row of the auditorium during play practice. When sitting next to her, he would stroke the top of her thighs against her vagina.

178.   While at Clarenceville High School, Defendant Debandt would sexually assault and/or harass Madison on a daily basis, including, but not limited to:

a)   Making sexually explicit comments about her and other girls;

b)   Commenting on her body, the way her clothes looked on her, and how it made him feel;

c)   Sexual touching of her thighs; and

d)   Frequently touching and adjusting erections in his pants in front of her.

179.   If Madison ignored or otherwise did not respond favorably to Defendant Debandt's sexual advancements and sexual comments, he would shun her and create an intimidating, hostile, or offensive learning environment, thus interfering with her ability to participate in or benefit from her theatre/choir activities.

180.   Defendant Debandt regularly sexually assaulted, molested, and/or harassed Madison while at Clarenceville High School in the choir room, Debandt's office,

and in the auditorium without concealing his actions.  Other teachers and administrator's witnessed Debandt's actions and never once intervened or indicated that what she was experiencing was abnormal or inappropriate in any way, shape or form.

### G. HOLLY MESSERSCHMITT

181.   Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

182.   Plaintiff Holly Messerschmitt ("Holly") was a student in the Defendant Clarenceville School District, attending the Clarenceville High School and Clarenceville Middle School.

183.   Holly first met Defendant Debandt while she was a student at Clarenceville Middle School. Defendant Debandt was her choir and theatre arts teacher, and she was his student through 2018.

184.   Beginning in the sixth grade, Defendant Debandt began to show her special attention, pay her compliments, and grant her special privileges. This special attention continued into high school and escalated.

185.   Defendant Debandt would encourage Holly to spend time with him privately in his school office during breaks, lunch and during regularly scheduled classes, buy her food, take her for rides in his vehicle, out to eat to spend more time together and tell her and others not to be surprised if she was his girlfriend someday.

186.   While at Clarenceville High School, Defendant Debandt would sexually assault and/or harass Holly on a weekly basis, including, but not limited to:

     a)    Making sexually explicit comments, including suggesting to her that she send naked pictures to him;

     b)    Commenting on her body, the way her clothes looked on her;

c)      Frequent sexual touching; and

d)      Frequently touching his groin and penis in front of her.

187.    If Holly shunned him or otherwise did not respond favorably to Defendant Debandt's advancements and sexual comments, he would shun her and create an intimidating, hostile, or offensive learning environment, thus interfering with her ability to participate in or benefit from her theatre/choir activities.

188.    In 2018, Holly learned that Emmalee had reported similar behavior to Clarenceville School District administration that nothing came out of the report, and, as such, was led to believe that what she was experiencing was normal and not inappropriate in any way, shape or form.

## H.  ALYSSA CRAIGIE

189.    Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

190.    Plaintiff Alyssa Craigie ("Alyssa") first met Defendant Debandt when she was a student at Clarenceville Middle School,  She was 11 years old at the time.

191.    Defendant Debandt would praise Alyssa's singing voice and ask her to stay back after class in the middle school.  Defendant Debandt would ask other middle school female students to stay back as well.  During that time, Defendant Debandt would talk to the girls and try to impress them with things he recently purchased, he would also ask them about their personal lives.

192.    When Alyssa became a freshman at Clarenceville High School, she was 14 years old, and joined the school choir and theater arts programs.  Alyssa saw Defendant Debandt every day of her freshman year.

193.    Defendant Debandt had an office in Clarenceville High School and invited female students to spend time in his office with him during class, passing times, and during other scheduled classes.

194.    When Defendant Debandt was in the office with Alyssa, he would often wrap his legs around her legs and pull her chair close to him.  When he did this, he would thrust his pelvis up in a sexual manner.  He would sometimes put his iPad on her lap to show her something on the iPad and then lean over and lay on her.

195.    Defendant Debandt encouraged Alyssa to use Snapchat and Telegram to communicate with him.  Defendant Debandt would frequently send Alyssa explicit sexual communications.

196.    Defendant Debandt would frequently comment about Alyssa's body in a sexually explicit way.  As an example, in front of other students he would tell her that she was perfect for a role in the school play because she was "busty."  He would often call her "busty" and would frequently stare at her chest.  On one occasion, Defendant Debandt told her, "you don't need to stuff your bra for this part, you're already pretty busty."

197.    On one occasion, when Alyssa was not feeling well at play practice. Defendant Debandt told her to rest and asked her sit next to him in the front row of the auditorium. He then put his hands in her lap and began rubbing her inner thighs.  Alyssa was wearing shorts and her inner thighs were bare.

198.    On another occasion, Defendant Debandt told Alyssa and another student that he would drive them to a singing event at Cranbrook to view a choir that he was affiliated with.  Instead of taking the students to the choir performance, he took them to lunch.

34

199.    While at Clarenceville High School, Defendant Debandt would sexually assault and/or harass Alyssa on a daily basis, including, but not limited to:

a)    Making sexually explicit comments;

b)    Commenting on her body, the way her clothes looked on her, and how that made him feel;

c)    Sending explicit sexual communications;

d)    Wrapping his legs around her body to pull him closer to her;

e)    Frequent brushing his groin and hand against her backside;

f)    Sexual touching of her inner thighs; and

g)    Frequently touching his groin and penis in front of her in her pants.

200.    If Alyssa ignored or otherwise did not respond favorably to Defendant Debandt's sexual advancements and sexual comments, he would shun her and create an intimidating, hostile, or offensive learning environment, thus interfering with her ability to participate in or benefit from her theatre/choir activities.

201.    During her junior year at Clarenceville High School, Alyssa tried to drop choir so as to avoid Defendant Debandt.  She requested a change of schedule with the counselor. However, Defendant Debandt then emailed the counselor and falsely stated that Alyssa wanted to join his class.  After Defendant Debandt's email, Alyssa's counselor put her back into his class.

202.    During Alyssa's sophomore year at Clarenceville High School, another female student allegedly reported to the administration at Clarenceville High School that Defendant Debandt sexually assaulted her by touching her in between her legs in his office.

35

203.   When Plaintiff Emmalee Forrester reported Defendant Debandt's sexual assault, molestation, and/or harassment to the Clarenceville High School administration, Principal Nelson asked Alyssa if she had witnessed anything.  Alyssa reported to Principal Nelson that Defendant Debandt frequently said sexually explicit things to Emmalee and had asked Emmalee to his private hotel room at Disney World.  She was not asked any additional questions and heard nothing thereafter.

204.   Alyssa's mother went to Clarenceville High School to inquire whether the school was looking into Emmalee's report.  Principal Nelson told Alyssa's mother that "we're looking into it" and the school needed "time to think it over."

205.   As far as Alyssa is aware, after the 2018 report, no action was taken, neither Child Protective Services nor law enforcement was contacted, and no restrictions were placed on Defendant Debandt.  She was led to believe that what she and the other students were experiencing was normal and not inappropriate in any way, shape or form.

**I.  MEGAN HADDAD**

206.   Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

207.   Plaintiff Megan Haddad (maiden name Michals) first met Defendant Debandt in 2005 when she was a student at Troy Athens High School and cast in the school musical Godspell. She was 16 years old.

208.   Upon information and belief, in and around 2005, Defendant Debandt was hired by Troy Athens High School to work with Troy Athens High School students that were participating in the musical Godspell.  Defendant Debandt was approximately 26 years old at this point.

209.    Defendant Debandt began to assist on private one on one practices with Plaintiff Megan Haddad at the high school. He instructed Megan Haddad to play her part in a suggestive way that would "give high school boys wet dreams." He would continue to make sexual comments and sexually touch her during these sessions.

210.    Defendant Debandt eventually began to give her rides to and from home, and invite her over to his house.

211.    Defendant Debandt would show Plaintiff Megan Haddad naked pictures of himself and his penis on his phone.

212.    Defendant Debandt would tell Plaintiff Megan Haddad that she was his girlfriend, they were going to have a future, be married and travel the world.

213.    One night Defendant Debandt had Plaintiff Megan Haddad to his home. He touched her side and commented that she had some extra body fat and that he liked that because it was "something to hold on to".

214.    Defendant Debandt would buy Megan Haddad alcohol, get her drunk and then kiss her and fondle her breasts.

215.    On another occasion, Defendant Debandt took her to a hotel where he masturbated into a shirt in front of her and performed oral sex on her. He digitally penetrated her and commented how "tight" her vagina was. She didn't understand what that meant.

216.    Employees, servants and/or agents of Troy Athens High School were aware of Defendant Debandt's sexual harassment, assault and molestation of student Plaintiff Megan Haddad.

217.    Upon information and belief, theater director, Frank Pitts, theatre director Christi Manfredi, and a school secretary were aware of the sexual relationship.  The school secretary was Defendant Jason Debandt's mother, Mollie Debandt.

218.    The theatre director, Christi Manfredi, advised Megan Haddad that she was old enough and, thus, that nothing Defendant Debandt was doing was illegal.

219.    The sexual relationship continued until July of 2005 when Megan Haddad advised Defendant Debandt that she did not want to see him or talk to him anymore.

220.    The sexual relationship created an intimidating, hostile and/or offensive learning environment, thus interfering with her ability to participate in or benefit her educational and theatre activities.

221.    No teacher, counselor or any other employee took any action to end Defendant Debandt's harassment and assaults, or otherwise report the activity to Child Protective Services, law enforcement or to those higher up in the Troy School District.

**CLARENCEVILLE SCHOOL DISTRICT INTERNAL POLICIES AND PROCEDURES REGARDING SEXUAL HARASSMENT**

222.    Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

223.    At all material times hereto, Defendant Valentine was designated by the Clarenceville Board of Education to serve as a Compliance Officer, also known as a Civil Right Coordinator, and was responsible for coordinating the Clarenceville School District's efforts to comply with applicable Federal and State laws and regulations, including the District's duty to comply with applicable Federal and State laws and

regulations, including Title IX of the Education Amendment Act of 1972.[1]

224.    At all material times hereto, Defendant Bergeron was designated by the Clarenceville Board of Education to serve as a Compliance Officer, also known as a Civil Right Coordinator, and was responsible for coordinating the Clarenceville School District's efforts to comply with applicable Federal and State laws and regulations, including the District's duty to comply with applicable Federal and State laws and regulations, including Title IX of the Education Amendment Act of 1972.[2]

225.    Pursuant to Clarenceville School District Policy 1613, *Student Supervision and Welfare*: "Administrators shall maintain a standard of care for the supervision, control and protection of students commensurate with their assigned duties and responsibilities and are expected to establish and maintain professional staff/student boundaries that are consistent with their legal, professional and ethical duty of care for students."  Further, pursuant to Policy 1613, "[t]he Superintendent shall maintain and enforce the following standards: A. Each administrator shall report immediately to the Superintendent any accident, safety hazard, or other potentially harmful condition or situation s/he detects." Further, "[p]ursuant to the law of the State and Board Policy 8462, each administrator shall report to the proper legal authorities, immediately, any sign of suspected child abuse

---

[1] Clarenceville School District Board of Education Policies, PO1422 - https://go.boarddocs.com/mi/claren/Board.nsf/Public?open&id=policies# (last visited September 14, 2020)

[2] Clarenceville School District Board of Education Policies, PO1422 - https://go.boarddocs.com/mi/claren/Board.nsf/Public?open&id=policies# (last visited September 14, 2020)

or neglect."

226.   Pursuant to Clarenceville School District Board of Education Policies 1662, 3362, and 5517 - *Anti-Harassment*: "It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment…The Board will vigorously enforce its prohibition against discriminatory harassment…. The Board will investigate all allegations of harassment and in those cases where unlawful harassment is substantiated, the Board will take immediate steps to end the harassment, prevent its reoccurrence, and remedy its effects. Individuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action."

227.   Pursuant to Clarenceville School District Board of Education Policies 1662, 3362, and 5517 - *Anti-Harassment,* "[t]he Board will take immediate steps to impose disciplinary action on individuals engaging in any of the following prohibited acts: …C. Disregarding, failing to investigate adequately, or delaying investigation of allegations of harassment, when responsibility for reporting and/or investigating unlawful harassment charges comprises part of one's supervisory duties."

228.   Pursuant to Clarenceville School District Board of Education Policies 1662, 3362, and 5517 - *Anti-Harassment*, and borrowing from Title VII of the Civil Rights Act of 1964 and Title IX of the Educational Amendments of 1972, "sexual harassment" is defined as :

40

*Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when:*

A. *Submission to such conduct is made either implicitly or explicitly a term or condition of an individual's employment, or status in a class, educational program, or activity.*

B. *Submission or rejection of such conduct by an individual is used as the basis for employment or educational decisions affecting such individual.*

C. *Such conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity.*

*Sexual harassment may involve the behavior of a person of either gender against a person of the same or opposite gender.*

*Prohibited acts that constitute sexual harassment may take a variety of forms. Examples of the kinds of conduct that may constitute sexual harassment include, but are not limited to:*

A. *Unwelcome sexual propositions, invitations, solicitations, and flirtations.*

B. *Unwanted physical and/or sexual contact.*

C. *Threats or insinuations that a person's employment, wages, academic grade, promotion, classroom work or assignments, academic status, participation in athletics or extra-curricular programs or events, or other conditions of employment or education may be adversely affected by not submitting to sexual advances.*

D. *Unwelcome verbal expressions of a sexual nature, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, jokes or innuendoes; unwelcome suggestive or insulting sounds or whistles; obscene telephone calls.*

E. *Sexually suggestive objects, pictures, videotapes, audio recordings or literature, placed in the work or educational environment, which may embarrass or offend individuals.*

F. *Unwelcome and inappropriate touching, patting, or pinching; obscene gestures.*

G. *A pattern of conduct, which can be subtle in nature, that has sexual overtones and is intended to create or has the effect of creating discomfort and/or humiliation to another.*

H. *Remarks speculating about a person's sexual activities or sexual history, or remarks about one's own sexual activities or sexual history.*

I. *In the context of employees, consensual sexual relationships where such relationship leads to favoritism of a subordinate employee with whom the superior is sexually involved and where such favoritism adversely affects other employees or otherwise creates a hostile work environment.*

J. *Inappropriate boundary invasions by a District employee or other adult member of the School District community into a student's personal space and personal life.*

K. *Verbal, nonverbal or physical aggression, intimidation, or hostility based on sex or sex-stereotyping that does not involve conduct of a sexual nature.*

229.    Pursuant to Clarenceville School District Board of Education Policies 1662, 3362, and 5517 - *Anti-Harassment*: "Sexual conduct/relationships with students by District employees or any other adult member of the School District community is prohibited, and any teacher, coach, or other school authority who engages in sexual conduct with a student may also be guilty of the criminal charge of "sexual battery." The issue of consent is irrelevant in regard to such criminal charge and/or with respect to the application of this policy to District employees or other adult members of the School District community."

230.    Pursuant to Clarenceville School District Board of Education Policies 1662, 3362, and 5517 - *Anti-Harassment*: "If a Complainant informs a teacher, Principal, Superintendent, or other District employee, either orally or in writing, about any complaint of harassment or retaliation, that employee must report such information to the Compliance Officer or designee within two (2) business days." Further, "[a]ll complaints of harassment involving a District employee…against a student will be formally

investigated.  Similarly, any allegations of sexual violence will be formally investigated."

231.    Pursuant to Clarenceville School District Board of Education Policy 2260 – *Non-Discrimination and Access to Equal Educational Opportunity*: "Any form of discrimination or harassment can be devastating to an individual's academic progress, social relationship and/or personal sense of self-worth."

232.    Pursuant to Clarenceville School District Board of Education Policy 3210 – *Staff Ethics*: "In keeping with the ethical responsibilities of the professional staff, the Board of Education requires that staff not engage in any non-professional relationship of any kind with students of this District prohibited by law, regardless of their age.  Professional staff should not provide alcohol, drugs, cigarettes, or other contraband to a student."

233.    Pursuant to Clarenceville School District Board of Education Policy 3213 – *Student Supervision and Welfare*, "[t]he Superintendent shall maintain and enforce the following standards:

F.  *A professional staff member shall not send students on any personal errands.*

G.  *A professional staff member shall not associate or fraternize with students at any time in a manner which may give the appearance of impropriety, including, but not limited to, the creation or participation in any situation or activity which could be considered abusive or sexually suggestive or involve harmful substances such as illegal drugs, alcohol, or tobacco. Any sexual or other inappropriate conduct with a student by any staff member will subject the offender to potential criminal prosecution and disciplinary action by the Board up to and including termination of employment.*

*This provision should not be construed as precluding a professional staff member from associating with students in private for legitimate or proper reasons. However, dating, romantic and/or sexual relationships with students, regardless of their age and regardless of consent are absolutely prohibited, unless the staff member and student are legally married.*

I.  *A professional staff member shall not transport students in a private vehicle without the approval of the principal, except in emergencies.*

K. *Staff members shall only engage in electronic communication with students via email, texting, social media and/or online networking media, such as Facebook, Twitter, YouTube, Instagram, Skype, blogs, etc., when such communication is directly related to the professional scope of their educational role. Examples could be: curricular matters or co-curricular and/or extra-curricular activities/events. Electronic communications with students should be appropriate in tone, content, and quantity. Stalking, harassment, or other unwelcome behaviors are prohibited, including any type of sexually suggestive comments, photos, or graphics.*

L. *Staff members are prohibited from electronically transmitting any personally identifiable image of a student(s), including video, photographs, streaming video, etc. via email, text message, or through the use of social media and/or online networking media, such as Facebook, Twitter, YouTube, Instagram, Skype, blogs, etc., unless such transmission has been made as part of a pre-approved curricular matter or co-curricular/extracurricular event or activity such as a school- sponsored publication or production in accordance with Policy 5722.*

*Pursuant to the laws of the State and Board Policy 8462, each professional staff member shall report to the proper legal authorities immediately, any sign of suspected child abuse or neglect.*

234.   Pursuant to Clarenceville School District Board of Education Policy 5540 – *Interrogation of Students* – "Every Board official and employee who, in connection with his/her position, knows or suspect child abuse or neglect must immediately report that knowledge or suspicion to a public children's services or law enforcement agency in accordance with Board Policy 8462."

235.   Pursuant to Clarenceville School District Board of Education Policy 8462 – *Student Abuse and Neglect* – "Each professional staff member employed by this District who has reasonable cause to suspect child abuse or neglect shall be responsible for reporting immediately every case, whether ascertained or suspected, of abuse or neglect resulting in physical or mental injury to a student by other than accidental means." Further, "[a]ny support staff member who has reasonable cause to suspect child abuse or neglect shall immediately report any such case to the principal and they shall, in turn, immediately notify the Department of Human Services."

236. The Clarenceville School District Board of Education adopted Policy 2266 – *Non-Discrimination on the Basis of Sex in Education Programs or Activities* on August 13, 2020, which sets forth further obligations on District employees in response to complaints to sexual harassment, assault and molestation.

## TROY SCHOOL DISTRICT INTERNAL POLICIES AND PROCEDURES REGARDING SEXUAL HARASSMENT

237. Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

238. Pursuant to Troy Board of Education Bylaws and Policies, 8000.07 – Discrimination and Harassment – "There will be no tolerance for discrimination or harassment on the basis of …sex.... The School District prohibits harassment and other forms of discrimination whether occurring at school, on School District property…or at any School District related activity or event. The Superintendent will designate compliance officers and develop and implement regulations for the reporting, investigation and resolution of complaints of discrimination or harassment."

239. Pursuant to Troy Board of Education Bylaws and Policies, 8007-AR – Discrimination and Harassment – "The School District recognizes its obligation under the law to investigate reported instances of sex-based discrimination and harassment."

240. Pursuant to Troy Board of Education Bylaws and Policies, 8007.1-AR – Discrimination and Harassment – Students – "A complaint alleging sexual violence will be addressed only though the formal complaint process. All complaints of illegal discrimination or harassment by a District employee or any other adult member of the District community will also be addressed only through the formal complaint process. Step 1. A student who believes s/he has been illegally discriminated against or harassed may

tell: (1) an employee or building administrator in the school the student attends; (2) the Superintendent or other District-level employee; and/or (3) the Compliance Officer (Title IX Coordinator for claims for sex discrimination).All informal complaints received by a staff member must be reported to the Compliance Officer within two (2) school days. The Compliance Officer will either facilitate an informal resolution as described below on his/her own, or appoint another individual to facilitate an informal resolution.  This reporting requirement applies to **all** complaints made by or on behalf of a student, regardless of where the conduct is alleged to have occurred."

<u>**ALLEGATIONS OF FRAUDULENT CONCEALMENT**</u>
<u>**CLARENCEVILLE SCHOOL DISTRICT**</u>

241.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

242.   At all times during all the allegations set forth by the named Clarenceville Plaintiffs herein, the Clarenceville Plaintiffs were schoolgirls.  They were at all times subject to the authority of teacher Debandt.

243.   At all times during all the allegations set forth by the named plaintiffs herein, any attempt at reporting the improper and illegal activities of teacher Debandt were met with the overriding, general sentiment of "he wasn't doing anything wrong."

244.   At all times during all the allegations set forth by the named plaintiffs herein, any attempt to follow up was met with the response that "we will let law enforcement decide", which was followed up by no law enforcement activity being undertaken.

245.   Thus, at all times during all the allegations set forth by the named plaintiffs herein, the plaintiffs and their families were led to believe that what teacher Debandt did was normal and appropriate.

246.   The above constitutes actions taken to fraudulently conceal the existence of a case, under applicable Michigan law, including but not limited to MCL 600.5855, and applicable Federal law, including but not limited to Title IX and 24 USC 1983.

## ALLEGATIONS OF FRAUDULENT CONCEALMENT - TROY

247.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

248.   At all times pertinent hereto, Plaintiff Megan Haddad was a schoolgirl.  She was at all times subject to the authority of Defendant Debandt.

249.   At all times pertinent hereto, when adults, employees and/or agents of Defendant Troy School District were made aware of the sexual assaults Defendant Debandt was perpetrating on Plaintiff Megan Haddad, they took no action to further report the assaults and instead, advised Plaintiff Megan Haddad that she was "old enough."

250.   Thus, at all times during all the allegations set forth herein, Plaintiff Megan Haddad was led to believe that what teacher Debandt did was normal and appropriate.

251.   The above constitutes actions taken to fraudulently conceal the existence of a case, under applicable Michigan law, including but not limited to MCL 600.5855, and applicable Federal law, including but not limited to Title IX and 24 USC 1983.

## COUNT ONE - VIOLATION OF TITLE IX OF THE EDUCATION ACT OF 1972, 20 U.S.C. § 1681 *et seg.*

### (Against Clarenceville Defendants)

252.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

253.   Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a) provides in pertinent part:

*"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."*

254.    Title IX is implemented through the Code of Federal Regulations.  See 34 C.F.R. Part 106.

255.    34 C.F.R. § 106.8(b) provides:

*"… A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."*

256.    "Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."

257.    Under Title IX, sexual harassment is any type of unwelcome conduct of a sexual nature. "It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."

258.    Plaintiffs are "persons" within the meaning of 20 U.S.C. §1681(a).

259.    Defendant Clarenceville School District receives financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681, *et seq.*

260.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students, and third parties.

261.    In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent to known acts of teacher-student discrimination."

262.   In *Vance v. Spencer County Public School District*, 231 F.3d 253 (6th Cir 2000) it was held that actionable deliberate indifference could be shown by a school district responding to a sexual assault by merely investigating it, but taking no other action at all.

263.   In *Davis v. Monroe County Board of Education*, 526 U.S. 629, at 648 (1999), the United States Supreme Court held that a school district's response or lack to sexual harassment can be actionable when it is shown to be "…clearly unreasonable in the light of the known circumstances…"

264.   Defendant Debandt's actions and conduct while employed by Defendant Clarenceville School District were carried out under one of Defendant Clarenceville School District's programs.

265.   Defendant Debandt's sexual harassment, assault, battery and/or molestation of Clarenceville Plaintiffs, constitutes sexual discrimination and harassment under Title IX, and subjected Plaintiffs to a sexually hostile environment.

266.   Pursuant to Title IX, Defendant Clarenceville School District is obligated and required to investigate all allegations of sexual assault, battery, molestation, and harassment, including allegations that sexual assault, battery, molestation, and harassment that has been committed by an employee, student or third party.

267.   Defendant Clarenceville School District owed Clarenceville Plaintiffs duties under Title IX, which duties included not to engage in and be deliberately indifferent to known sexual assault, battery, molestation, harassment, and other sexual misconduct

268.   Upon information and belief, an "appropriate person" at Clarenceville School District, within the meaning of Title IX, including but not limited to, Principal Neslon,

Vice Principal Kantor, Superintendent Shepich, Title IX Coordinator Bergeron, Title IX Coordinator Valentine, and other teachers, administrators and counselors, had actual and/or constructive notice of sexual assault, battery, molestation and/or harassment committed by Defendant Debandt from at least 2009/2010 and through 2018, as described herein this Complaint.

269.    The Clarenceville Defendants failed to carry out their duties to investigate and take corrective action, as well as to make appropriate recommendations, under Title IX following the complaints of sexual assault, battery, molestation and/or harassment, as described herein.

270.    Despite the complaints and concerns conveyed to Defendant Clarenceville School District employees, agents, and/or representatives as described herein, allegations went unaddressed, which violated reporting policies and procedures and Title IX, and was done in a manner that was reckless, grossly negligent, and deliberately indifferent.

271.    The Clarenceville Defendants acted with deliberate indifference and in a clearly unreasonable manner by failing to respond to the allegations of sexual assault, abuse, molestation and/or harassment, in light of the known circumstances, Defendant Debandt's conduct and behavior toward female students, his continued unfettered access to young girls, and repeated complaints regarding his sexual harassment of students.

272.    The Clarenceville Defendants' responses to the complaints were clearly unreasonable as Defendant Debandt continued to sexually assault, abuse, molest and/or harass female students and other individuals after the reports were made.

273.   The Clarenceville Defendants had actual and/or constructive knowledge of, but were recklessly and deliberately indifferent to Defendant Debandt's sexual assault, battery, molestation, and/or harassment in between 2009/2010 and 2018.

274.   The Clarenceville Defendants' failure to formally investigate and take corrective actions to repeated complaints of Defendant Debandt's sexual assault, battery, molestation, and/or harassment in 2010, 2016 and 2018, resulted in Plaintiff's and others being subjected to further sexual assault, battery, molestation, and/or harassment, and a sexually hostile environment, effectively denying them access to educational opportunities in the Clarenceville School District.

275.   The Clarenceville Defendants failed to adequately supervise Defendant Debandt even though they had actual knowledge that Defendant Debandt posed a substantial risk of additional sexual abuse of the female students whom he had unfettered access to.

276.   Specifically, Clarenceville Defendants also violated Title IX by, *inter alia*:

a)   Ignoring complaints and reports regarding Defendant Debandt's substantial risk of sexually abusing and harassing female students, including Plaintiffs, or being deliberately indifferent thereto;

b)   Ignoring the reports that Defendant Debandt had inappropriately touched and harassed Plaintiff Taylor Seymour, Plaintiff Emmalee Forrester, and Plaintiff Justyse Perry, or being deliberately indifferent thereto;

c)   Failing to investigate the many reports of Defendant Debandt's sexual misconduct, or being deliberately indifferent thereto;

d)   Requiring Plaintiffs to protect themselves from sexual harassment and abuse perpetrated by Defendant Debandt;

e)   Creating a climate that tolerated sexual harassment against Plaintiffs, or being deliberately indifferent thereto;

     f)   Failing to discipline Defendant Debandt for his sexual misconduct against female students, including Plaintiffs, or being deliberately indifferent thereto;

     g)   Failing to increase supervision or monitoring of Defendant Debandt after his sexual misconduct and harassment was reported, or being deliberately indifferent thereto;

     h)   Failing to report Defendant Debandt to Child Protective Services or law enforcement, despite the fact that District administrators are mandated reporters;

     i)   Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to Plaintiff Taylor Seymour, Plaintiff Emmalee Forrester, and Plaintiff Justyse Perry after they were sexually harassed and/or assaulted by Debandt, or being deliberately indifferent thereto; and

     j)   Through other actions, inaction, and deliberate indifference.

277.   Defendant Clarenceville School District's deliberate indifference before, during, and after the sexual assault, battery, molestation, and/or harassment of Plaintiffs was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

278.   As a direct and proximate result of the Clarenceville Defendants' actions and inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

279.   In the alternative, the actions or inaction of the Clarenceville Defendants was deliberately indifferent or so reckless as to demonstrate a substantial lack of concern

for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic life stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries.  Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT TWO - VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983 – BODILY INTEGRITY

### (Against Defendant Debandt and Clarenceville Defendants)

280.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

281.   Plaintiffs, as females, are members of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

282.   Plaintiffs enjoy the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, battery, molestation, and harassment under the Fourteenth Amendment to the United States Constitution.

283.   At all times pertinent hereto, Clarenceville Defendants and Defendant Debandt were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Clarenceville School District.

284.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the Defendants' positions should have known.

285.    As a matter of custom, policy, and/or practice, Clarenceville Defendants had the ultimate responsibility and authority to investigate complaints from their students that involved allegations of impropriety, harassment or sexual assault by their teacher, and failed to do so with deliberate indifference.

286.    Defendant Principal Nelson's actions in assisting to exonerate Defendant Debandt from wrongdoing in response to the 2010 complaint by Taylor, and his statements to discourage Taylor from pursuing further action against Defendant Debandt, deprived Clarenceville Plaintiffs of their constitutional rights.

287.    Defendants Principal Nelson's and Assistant Principal Kantor's actions in assisting to exonerate Defendant Debandt from wrongdoing in response to the 2016 complaint by Emmalee, and their failure to conduct a formal investigation into Defendant Debandt, deprived Clarenceville Plaintiffs of their constitutional rights.

288.    Defendants Principal Nelson's and Assistant Principal Kantor's actions in assisting to exonerate Defendant Debandt from wrongdoing in response to the 2018 complaint by Justyse and Emmalee and statement in support by Alyssa, and their failure to conduct a formal investigation into Defendant Debandt, deprived Clarenceville Plaintiffs of their constitutional rights.

289.    Clarenceville Defendants had a duty to prevent sexual assault, abuse, harassment and molestation of Clarenceville School District students, those duties arising under the above-referenced constitutional rights, as well as established rights pursuant to

Title IX.

290.    The Clarenceville Defendants' failure to address these complaints led to an unknown number of individuals (aside from the Plaintiffs) being victimized, sexually assaulted, abused and/or molested by Defendant Debandt.

291.    Additionally, the Clarenceville Defendants' failure to properly address the 2010, 2016 and 2018, and other complaints regarding Debandt's sexually assaultive conduct also led to others being victimized, sexually assaulted, abused, harassed and molested by Defendant Debandt.

292.    Defendant Clarenceville School District internal policies provide that "each administrator shall report to the proper legal authorities, immediately, any sign of suspected child abuse or neglect."[3]

293.    Defendant Clarenceville School District internal policies provide that "[s]exual conduct/relationships with students by District employees or any other adult member of the School District community is prohibited, and any teacher, coach, or other school authority who engages in sexual conduct with a student may also be guilty of the criminal charge of "sexual battery".  The issue of consent is irrelevant in regard to such criminal charge or with respect to the application of this policy to District employees or other adult members of the School District community."[4]

294.    Defendant Clarenceville School District internal policies provide that "[i]f A Complainant informs a teacher, Principal, Superintendent, or other District employee, either orally or in writing, about any complaint of harassment…that employee must report such information to the Compliance Officer or designee within two (2) business days…[a]ll

---

[3] Clarenceville School District PO 1613 and PO 8462
[4] PO 1662, 3362, 5517

complaints of harassment involving a District employee…against a student will be formally investigated.   Similarly, any allegations of sexual violence will be formally investigated."[5]

295.   Defendant Clarenceville School District internal policies provide that the Superintendent shall maintain and enforce the standards set forth in policy 3213 above, for student supervision and welfare.

296.   These policies, and others, were violated in or around 2010, 2016 and 2018 when Plaintiffs' reported sexual assault, abuse, and/or harassment by Defendant Debandt to Defendant Clarenceville School District representatives and administrators, including, but not limited to, Defendants Principal Nelson and Vice Principal Kantor and they refused to report the incidents to law enforcement or formally investigate the incidents.

297.   Defendant Clarenceville School District representatives and administrators, including, but not limited to, Defendants Principal Nelson and Vice Principal Kantor's violation of the policies by refusing to take the appropriate and necessary action in response to legitimate and credible claims of sexual assault, molestation and/or harassment by Taylor, Justyse and Emmalee, and supported by Alyssa resulted in Plaintiffs' continued violations of their constitutional rights, including their Due Process right to bodily integrity, which includes the right to be free from sexual assaults, molestation and harassment.

298.   Defendant Clarenceville School District representatives and administrators, including, but not limited to, Defendants Principal Nelson and Vice Principal Kantor's

_____

[5] Clarenceville School District PO 1662, 3362, and 5517

actions/inactions as alleged above also demonstrate the existence of an agreement or conspiracy between Defendant Debandt and Clarenceville School District representatives and administrators, including, but not limited to, Defendants Principal Nelson and Vice Principal Kantor to deprive Plaintiffs of their constitutional rights.

299.    At all relevant times, Defendant Clarenceville School District had a policy requiring each professional staff member employed by the District to immediately report suspected child abuse.

300.    Defendant Principal Nelson violated this policy in or around 2010.

301.    Defendants Principal Nelson and Vice Principal Alan Kantor violated this policy in or around 2016.

302.    Defendants Principal Nelson and Vice Principal Alan Kantor violated this policy in or around 2018.

303.    Defendant Clarenceville School District representatives and administrators, including, but not limited to, Defendants Principal Nelson and Vice Principal Kantor failed to adequately and properly investigate the complaints of Plaintiffs or other similarly situated individuals including, but not limited to failing, to:

      a)   Perform a thorough and formal investigation into improper conduct by Defendant Debandt with Plaintiffs after receiving complaints in 2010, 2016, and 2018;

      b)   Thoroughly review and investigate all policies, practices, procedures, and training materials related to the circumstances surrounding the conduct of Defendant Debandt;

      c)   Recognize sexual assault when reported in 2010, 2016 and 2018 and permitted administrators to deem sexual assault as not of a sexual nature; and

      d)   Failing to report the reported sexual harassment and assaults to the appropriate legal authorities;

    e)  Failing to report the allegations of sexual harassment to the Title IX coordinators, superintendent, and/or Board of Education; and

    f)  Failing to put in place institutional guidelines following the 2010, 2016 and 2018 complaints.

304.    The Clarenceville School District had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant Clarenceville School District's property and to Clarenceville School District students, including to Plaintiffs.

305.    By failing to prevent the aforementioned sexual assault, abuse, harassment and/or molestation upon Clarenceville Plaintiffs, and by failing to appropriately respond to numerous reports of Defendant Debandt's sexual assault, abuse, harassment and/or molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, Clarenceville Defendants are liable to Clarenceville Plaintiffs pursuant to 42 U.S.C. § 1983.

306.    Clarenceville Defendants are also liable to Clarenceville Plaintiffs under 42 U.S.C. § 1983 for maintaining customs, policies, and practices which deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

307.    Clarenceville Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Debandt, with the result that Defendant Debandt was allowed to violate the constitutional rights of persons such as Plaintiffs with impunity.

308.    As a direct and proximate result of Defendants Superintendent Shepich, Principal Nelson, Vice Principal Kantor, Title IX Coordinator Bergeron, and Title IX

Coordinator Valentine, and Defendant Debandt's actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

309.   In the alternative, the actions or inactions of Defendants Superintendent Shepich, Principal Nelson, Vice Principal Kantor, Title IX Coordinator Bergeron, and Title IX Coordinator Valentine were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT THREE - FAILURE TO SUPERVISE, 42 U.S.C. § 1983

### (Against Clarenceville Defendants)

310.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

311.   Clarenceville Defendants had and have the ultimate responsibility and authority to supervise their employees, agents, and/or representatives, including Defendant Debandt and all faculty and staff, regarding their duties toward students, faculty, staff, and visitors.

312.   Clarenceville Defendants failed to supervise its employees, agents, and/or representatives, including all faculty and staff, regarding the following:

a) Perceive, report, and stop inappropriate sexual conduct in the district;

b) Provide diligent supervision over students;

c) Report suspected incidents of sexual abuse, sexual harassment and sexual assault;

d) Ensure the safety of all students, faculty, staff, and visitors to Defendant Clarenceville School District premises;

e) Provide a safe environment for all students, faculty, staff, and visitors to Defendant Clarenceville' s premises free from sexual harassment; and,

f) Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

g) The above list of duties is not exhaustive.

313.   Clarenceville Defendants also failed to adequately train teachers, counselors, support staff, and others regarding the aforementioned duties which led to violations of Clarenceville Plaintiffs' rights.

314. Clarenceville Defendants' failure to adequately supervise was the result of Clarenceville Defendants' deliberate indifference toward the well-being of students.

315. Clarenceville Defendants' failure to adequately supervise is closely related to or actually caused Clarenceville Plaintiffs' injuries.

316. As a result, Clarenceville Defendants deprived Clarenceville Plaintiffs of rights, including those described herein, secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

317. As a direct and proximate result of Clarenceville Defendants actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

318. In the alternative, the actions or inactions of the Clarenceville Defendants were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from

61

performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT FOUR - FAILURE TO TRAIN, 42 U.S.C. § 1983
### (Against Defendant Clarenceville School District)

319.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

320.    Children, like Plaintiffs were at the time of the events at issue in this case, have a well-established right to be free from teacher sexual abuse, which violates a child's right to personal security and bodily integrity guaranteed by the Fourteenth Amendment to the U.S. Constitution.

321.    The U.S. Supreme Court holds, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and that a plaintiff may bring causes of action under both Title IX and 42 U.S.C. § 1983 for unlawful sex discrimination."[6]

322.    At all relevant times hereto, Defendant Clarenceville School District was a policymaker having a duty to train, and failed to properly or sufficiently train administrators, teachers, staff, students, security personnel, and/or parents, concerning school employee sexual harassment and misconduct against students and identifying, investigating, reporting, and stopping inappropriate conduct by teachers like Debandt against Clarenceville School District students like Clarenceville Plaintiffs.

323.    At all relevant times hereto, Defendant Clarenceville School District was a policymaker having a duty to train, and failed to properly or sufficiently train

---

[6] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-58 (2009).

administrators, teachers, staff, students, security personnel and parents regarding any written policies that would prevent or prohibit actions like those taken by Defendant Debandt against Clarenceville Plaintiffs.

324.    Defendant Clarenceville School District failed to provide such training to administrators, teachers, staff, students, security personnel and parents despite the obvious need for training.

325.    Numerous authorities, including the U.S. Supreme Court, Sixth Circuit, and U.S. Department of Education, made clear and gave notice to Defendant Clarenceville School District that school employees will confront student sexual harassment and abuse with regularity, given the high predictability, recurrence, prevalence, and injurious nature of school employee-against-student sexual assault, abuse, and harassment in schools.

326.    Defendant Clarenceville School District failed to adequately train its administrators, teachers, staff, students, security personnel and parents, and thereby prohibit or discourage foreseen sexual misconduct, despite the clearly established and well-known dangers of sexual abuse, harassment, assault, and battery faced by students in U.S. public schools, and thereby was deliberately indifferent.

327.    Defendant Clarenceville School District failed to provide such training in light of foreseeable consequences that could result from a lack of instruction, including, but not limited to, teacher sexual harassment against students like Clarenceville Plaintiffs.

328.    Defendant Clarenceville School District's failure to train its administrators, teachers, staff, students, security personnel and parents effectively denied Plaintiff's established Constitutional rights.

329.    Defendant Clarenceville School District's failure to train administrators, staff, teachers, students, security personnel and parents and in callous indifference to Clarenceville Plaintiffs' Constitutional rights.

330.    As a direct and proximate result of Defendant Clarenceville School District's actions, inactions, and deliberate indifference to and violation of Plaintiff's established Constitutional rights, Plaintiffs' suffered, and continues to suffer, injuries for which they are entitled to be compensated, including pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

## COUNT FIVE - VIOLATIONS OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL § 37.2101 (SEX DISCRIMINATION)

### (Against Clarenceville Defendants and Defendant Debandt)

331.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

332.    The Elliott-Larsen Civil Rights Act ("Elliott-Larsen") prohibits discrimination based on sex.  MCL 37.2102.

333.    "Discrimination because of sex includes sexual harassment." MCL 37.2103(i).

334.    "Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2103 (i).

335.    Elliott-Larsen protects against sexual harassment in educational institutions.

336.    Defendant Debandt was a "person" as that term is defined in Elliott-Larsen and was an agent and employee of Clarenceville School District.

337.    Defendant Clarenceville School District, including its middle school and high school, are educational institutions as defined by Michigan's Elliott-Larsen Civil Rights Act, pursuant to MCL § 37.2101 *et seq.*

338.    An educational institution shall not "discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2401(a).

339.    Elliott-Larsen also protects against sexual harassment in places of public accommodation. MCL 37.2302.  Under this section, an individual shall not be denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex." MCL 37.2302(a).

340.    Clarenceville School District's middle school and high schools are "places of public accommodation" because its "services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2301(a).

341.    Plaintiffs are "persons" within the meaning of MCL 37.2103(g).

342.    Defendant Debandt's actions and conduct were carried out under one of Clarenceville School District's programs, specifically its choir and theater programs.

343.   Defendant Debandt's actions and conduct toward Clarenceville Plaintiffs denied them the full and equal enjoyment of Clarenceville School District's services at a place of public accommodation, in violation of Elliott-Larson.

344.   Defendant Debandt's actions and conduct toward Plaintiffs of nonconsensual sexual assault, harassment, battery, and molestation, which includes unconsented touching and rubbing of Plaintiffs' buttocks and thighs, constitutes sex discrimination under Elliott-Larsen.

345.   As a direct and proximate result of the Defendants' actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

346.   In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing

Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT SIX - VIOLATION OF ARTICLE 1, § 17 SUBSTANTIVE DUE PROCESS – BODILY INTEGRITY

### (Against Clarenceville Defendants and Defendant Debandt)

347.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous and subsequent paragraphs.

348.   The Due Process Clause of the Michigan Constitution provides, in pertinent part, that "[n]o person shall…be deprived of life, liberty or property, without due process of law . . . ." Const 1963, art 1, § 17.

349.   The due process guarantee of the Michigan Constitution is coextensive with its federal counterpart.  The doctrine of substantive due process protects enumerated fundamental rights and liberties under the Due Process Clause of the Fourteenth Amendment of the Const 1963, art 1, § 17.

350.   The substantive component of due process encompasses, among other things, an individual's right to bodily integrity free from unjustifiable government interference.

351.   In a long line of cases, courts have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the right of bodily integrity.

352.   The right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process and Const 1963, art 1, § 17.

353.   The violation of the right to bodily integrity involves an egregious, nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective.

354.   The United States Supreme Court and the Michigan appellate courts have recognized that no right is held more sacred, or is more carefully guarded, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

355.   The violation of the right to bodily integrity must be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.

356.   Defendant Debandt violated Clarenceville Plaintiffs right to bodily integrity for the reasons set forth above, and cause severe and permanent damages to Plaintiffs.

357.   Defendant Clarenceville School District's official policies, customs and practices violations included:

a)   Failing to supervise, train and educate Defendant Debandt, Debandt's supervisors and administrators and/or Debandt's students or their parents so that in the absence of this supervision, training and education Debandt's unlawful activities could be carried out;

b)   Actively concealing Defendant Debandt's abhorrent behavior;

c)   Purposefully placing Defendant Debandt in the position as teacher to minor female students, despite knowing he sexually preyed on minor female students, further enabling Debandt to have unfettered sexual access to more students; and

d)   Not terminating Defendant Debandt.

358.   Defendant Clarenceville School District's policies, customs, and practices of permitting and condoning Defendant Debandt's sexual predator behavior, which enabled him to gain unfettered sexual access to minor female students, exposed students

to unspeakable invasions of their bodily integrity which were so egregious and outrageous that it shocks the conscience.

359.    The decisions which resulted in Clarenceville Defendants' violating Plaintiffs' constitutional rights as alleged in this Complaint were made by high level officials of Defendants Clarenceville School District.

## COUNT SEVEN - GROSS NEGLIGENCE

### (Against Clarenceville Defendants and Defendant Debandt)

360.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

361.    The Clarenceville Defendants owed Clarenceville Plaintiffs a duty of due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Debandt.

362.    A special, confidential, and/or fiduciary relationship was created between Plaintiffs and Defendant Debandt when he became their teacher and/or supervisor in the course of his employment, agency, and/or representation of the Clarenceville Defendants, resulting in Defendant Debandt owing Plaintiffs a duty to use due care and to provide an educational environment free from sexual harassment, assault and molestation.

363.    A special, confidential, and/or fiduciary relationship was created and existed at all times pertinent hereto between the Clarenceville Defendants and Defendant Debandt, as described herein this Complaint, resulting in the Clarenceville Defendants owing the Clarenceville Plaintiffs a duty to use due care.

364.    The Clarenceville Defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse.

365.    The Clarenceville School District had notice of complaints of a sexual nature related to Defendant Debandt and his relationships with young girls through Defendant Clarenceville School District employees, agents, and/or representatives as early as 2010, again in 2016 and again in 2018, as described herein this Complaint.

366.    The Clarenceville Defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known in 2010, 2016 and 2018, as described herein this Complaint.

367.    The Clarenceville Defendants' failure to adequately train and supervise Defendant Debandt, especially after the Clarenceville Defendants' knew or should have known of complaints regarding Defendant Debandt's conduct, was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to Plaintiffs.

368.    Defendant Debandt's conduct in sexually assaulting, harassing, abusing, and/or molesting Plaintiffs in the course of his employment, agency, and/or representation of the Clarenceville School District was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to Clarenceville Plaintiffs.

369.    The Clarenceville Defendants' conduct and the conduct of their individual employees and agents demonstrated a willful disregard for precautions to ensure Clarenceville Plaintiffs' safety.

370.    The Clarenceville Defendants knew or should have known of complaints pertaining to Defendant Debandt's nonconsensual sexual touching, sexual comments, and assaults that occurred during the course of the student-teacher relationship.

371.   The Clarenceville Defendants breached duties owed to Clarenceville Plaintiffs and were grossly negligent when they conducted themselves in the manner described herein this Complaint. These acts by the Clarenceville Defendants were committed with reckless disregard to Plaintiffs' safety, health, constitutional and/or statutory rights, and with substantial lack of concern to whether injury resulted to Plaintiffs.

372.   The Clarenceville Defendants failed to warn or advise current and former students, and their parents, of Defendant Debandt, including Clarenceville Plaintiffs and their parents, that allegations had surfaced of potentially sexually harassment and/or assault.

373.   The Clarenceville Defendants failed to offer counseling services to current of former students of Defendant Debandt, including Clarenceville Plaintiffs.

374.   As a direct and proximate result of the Clarenceville Defendants' and Defendant Debandt's actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

375.   As a direct and/or proximate result of Defendants' gross negligence, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety,

depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT EIGHT – NEGLIGENCE

**(Against Clarenceville Defendants and Defendant Debandt)**

376.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

377.    The Clarenceville Defendants owed Clarenceville Plaintiffs a duty to use ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, agents, and/or representatives, including Defendant Debandt.

378.    Defendant Debandt owed Plaintiffs a duty to use ordinary care and to provide an educational and learning environment free from sexual assault, harassment and molestation as their teacher and/or supervisor and as an employee, agent, and/or representative of the Clarenceville Defendants.

379.    A special, confidential, and/or fiduciary relationship was created between Clarenceville Plaintiffs and Defendant Debandt, in the form of a teacher-student relationship, in the course of Defendant Debandt's employment, agency, and/or representation of the Clarenceville Defendants, resulting in Defendant Debandt owing Plaintiffs a duty to use ordinary care in his undertakings.

380.    A special, confidential, and/or fiduciary relationship was created and existed at all times pertinent hereto between the Clarenceville Defendants and Defendant

Debandt, as described herein this Complaint, resulting in the Clarenceville Defendants owing Clarenceville Plaintiffs a duty to use ordinary care in their undertakings.

381.   The Clarenceville Defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse, molestation and harassment.

382.   The Clarenceville Defendants had notice of complaints of a sexual nature related to Defendant Debandt's relationships with young girls and students through Defendant Clarenceville employees, agents, and/or representatives as early as 2010, again in 2016 and again in 2018, as described herein this Complaint.

383.   The Clarenceville Defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known in 2010, 2016 and 2018, as described herein this Complaint.

384.   The Clarenceville Defendants knew or should have known of the foreseeability of sexual abuse with respect to young female students and Defendant Debandt.

385.   The Clarenceville Defendants' failure to properly address, investigate, and remedy complaints against Defendant Debandt's conduct was a breach of the duty to use ordinary care.

386.   Defendant Debandt's conduct in sexually assaulting, battering, molesting, and harassing Plaintiffs in the course of his employment, agency, and/or representation of the Clarenceville Defendants in the course of the teacher-student relationship was a breach of the duty to use ordinary care.

387.    The Clarenceville Defendants' failure to adequately train and supervise Defendant Debandt breached the duty of ordinary care.

388.    The Clarenceville Defendants failed to warn or advise current and former students and their parents of Defendant Debandt, including Plaintiffs and their parents, that allegations could and did surface that he was potentially sexually abusing, harassing and/or molesting minor female students.

389.    The Clarenceville Defendants failed to offer counseling services to current of former students of Defendant Debandt, including Clarenceville Plaintiffs.

390.    As a direct and proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

391.    In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages.  Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical

injuries.   Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT NINE- NEGLIGENT SUPERVISION

### (Against Clarenceville Defendants)

392.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

393.   The Clarenceville Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Debandt, while he was in the course of his employment, agency, and/or representation of the Clarenceville Defendants and while he interacted with minor female students, including Clarenceville Plaintiffs.

394.   Given the known sexual abuse of our youth, and especially our female youth, it was reasonably foreseeable that Defendant Debandt, who had prior allegations against him, had and/or would sexually abuse young female students, including Clarenceville Plaintiffs, unless properly supervised.

395.   The Clarenceville Defendants by and through their employees, agents, representatives, managers, and/or assigns, such as Defendants Superintendent Paul Shepich, Principal Troy Nelson, Vice Principal Alan Kantor, Title IX Coordinator David Bergeron, or Title IX Coordinator Renee Valentine, knew or reasonably should have known of Defendant Debandt's conduct and/or that Defendant Debandt was an unfit employee, agent, and/or representative because of his sexual interest in minor female students.

396.   The Clarenceville Defendants breached their duty to provide reasonable supervision of Defendant Debandt, and permitted Defendant Debandt, who was in a position of trust and authority, to commit acts against Clarenceville Plaintiffs.

397.   The aforementioned sexual assault, harassment, abuse, and molestation often occurred while Clarenceville Plaintiffs and Defendant Debandt were on the premises of Defendant Clarenceville School District property and while Defendant Debandt was in the course of his employment, agency, and/or representation with the Clarenceville Defendants.

398.   The Clarenceville Defendants tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, resulting in the allowance of Defendant Debandt to violate the rights of persons such as Clarenceville Plaintiffs with impunity.

399.   The Clarenceville Defendants failed to warn or advise current and former students or their parents of Defendant Debandt, including Clarenceville Plaintiffs and their parents that allegations surfaced that Defendant Debandt was sexually harassing, assaulting, abusing and/or molesting female students.

400.   As a direct and proximate result of the Clarenceville Defendants' failure to adequately supervise, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

76

401.    In the alternative, the Clarenceville Defendants' failure to supervise was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT TEN - NEGLIGENT FAILURE TO WARN OR PROTECT

### (Against Clarenceville Defendants)

402.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

403.    The Clarenceville Defendants knew or should have known that Defendant Debandt posed a risk of harm to Clarenceville Plaintiffs and/or others in Clarenceville Plaintiffs' situation.

404.    The Clarenceville Defendants knew or should have known that Defendant Debandt committed sexual assault, harassment, abuse, and molestation and/or was continuing to engage in such conduct.

405.    As early as 2010, the Clarenceville Defendants had direct and/or constructive knowledge of Defendant Debandt's dangerous conduct and failed to respond

reasonably and responsibly.

406.    The Clarenceville Defendants had a duty to warn or protect Clarenceville Plaintiffs and others in Clarenceville Plaintiffs' situation against the risk of injury by Defendant Debandt.

407.    The special, trusting, confidential, and/or fiduciary relationship between the Clarenceville Defendants and Defendant Debandt, as an employee, agent, and/or representative of the Clarenceville Defendants, created a duty for the Clarenceville Defendants to disclose information regarding Defendant Debandt's sexual conduct.

408.    The Clarenceville Defendants breached the duty owed to Clarenceville Plaintiffs by failing to warn Clarenceville Plaintiffs and their parents and/or by failing to take reasonable steps to protect Clarenceville Plaintiffs from Defendant Debandt.

409.    The Clarenceville Defendants breached the duties to protect owed to Clarenceville Plaintiffs by failing to:

a)  Respond to allegations of sexual assault, harassment and abuse;

b)  Detect and/or uncover evidence of sexual assault, harassment, and abuse; and

c)  Investigate, adjudicate, and terminate Defendant  Debandt's  employment with Defendant Clarenceville School District prior to 2019.

410.    The Clarenceville Defendants violated Clarenceville Plaintiffs' rights by failing to adequately screen, counsel, and/or discipline Defendant Debandt for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a teacher at an educational institution, resulting in a violation of Clarenceville Plaintiffs' rights.

411.   The Clarenceville Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Clarenceville Plaintiffs from Defendant Debandt's conduct.

412.   As a direct and proximate result of the Clarenceville Defendants' failure to warn or protect, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

413.   In the alternative, the Clarenceville Defendants' failure to warn or protect was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT ELEVEN - NEGLIGENT RETENTION

### (Against Clarenceville Defendants)

414.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

415.   The Clarenceville Defendants owed a duty to Clarenceville Plaintiffs and others in Clarenceville Plaintiffs' situation when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents, and/or representatives to exercise ordinary care.

416.   The Clarenceville Defendants breached the duties owed to Clarenceville Plaintiffs by failing to adequately investigate, report, and address complaints about Defendant Debandt's conduct, which the Clarenceville Defendants knew or should have known.

417.   The Clarenceville Defendants breached the duties owed to Clarenceville Plaintiffs when the Clarenceville Defendants continued to employ Defendant Debandt as an employee, agent, and/or representative after the Clarenceville Defendants discovered or should have reasonably discovered Defendant Debandt's conduct, which reflected a propensity for sexual misconduct.

418.   The Clarenceville Defendants' failure to act in accordance with the standard of care resulted in Defendant Debandt gaining access to and sexually assaulting, and/or sexually harassing, and/or sexually abusing Plaintiffs and an unknown number of other individuals.

419.   The aforementioned conduct of the Clarenceville Defendants in credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Debandt created a foreseeable risk of harm to Clarenceville

Plaintiffs and other minors and students.

420.    As a direct and proximate result of the Clarenceville Defendants' actions in retaining Defendant Debandt, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

421.    In the alternative, the Clarenceville Defendants' actions in retaining Defendant Debandt were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT TWELVE - MICHIGAN CHILD PROTECTION LAW - FAILURE TO REPORT CHILD ABUSE

### (Against Defendants Principal Nelson and Vice Principal Kantor)

422.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

423.    Michigan's Child Protection Law, MCL § 722.621 et seq., establishes mandatory reporting guidelines for suspected child abuse or neglect and provides penalties for failure to report child abuse or neglect.

424.    Specifically, MCL 722.623 provides in pertinent part:

> A physician, dentist, physician's assistant, registered dental hygienist, medical examiner, nurse, person licensed to provide emergency medical care, audiologist, psychologist, marriage and family therapist, licensed professional counselor, social worker, licensed master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of the friend of the court, school administrator, school counselor or teacher, law enforcement officer, member of the clergy, or regulated child care provider who has reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect.

425.    Child abuse is defined as "harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy." MCL § 722.622(g).

426.    Child neglect is defined as "harm or threatened harm to a child's health or welfare by a by a parent, a legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following: (i) Negligent treatment,

including the failure to provide adequate food, clothing, shelter, or medical care. (ii) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or any other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk." MCL § 722.622(k).

427.   Under MCL § 722.633(1), "A person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure."

428.   Defendants Principal Nelson and Vice Principal Kantor were mandatory reporters during the time Defendant Debandt was engaged in child abuse or child neglect.

429.   As established in the allegations above, Defendants Principal Nelson and Vice Principal Kantor had reasonable cause to suspect child abuse or child neglect.

430.   Defendants Principal Nelson and Vice Principal Kantor failed to report any instances of suspected child abuse or neglect.

431.   Defendants Principal Nelson and Vice Principal Kantor are or were employed by Defendant Clarenceville School District during the time Defendant Debandt was engaged in child abuse or child neglect, and were acting in the scope and course of their employment when they failed to report any instances of suspected child abuse or neglect.

432.   Defendants Principal Nelson and Vice Principal Kantor are directly civilly liable for the damages proximately caused by their failure to report any instances of suspected child abuse or neglect. Defendant Clarenceville School District are vicariously liable for said damages.

433.    As a direct and proximate result of Defendant Debandt's invasion of Plaintiffs' privacy, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

434.    In the alternative, the actions or inaction of Defendants were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT THIRTEEN - VIOLATION OF TITLE IX OF THE EDUCATION ACT OF 1972, 20 U.S.C. § 1681 *et seq.*

### (Defendant Troy School District)

435.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

436.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a) provides in pertinent part:

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"

437.    Title IX is implemented through the Code of Federal Regulations.  *See* 34 C.F.R. Part 106. 34 C.F.R. § 106.8(b) provides:

> "… A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

438.    "Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."

439.    Under Title IX, sexual harassment is any type of unwelcome conduct of a sexual nature. "It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."

440.    Plaintiff Megan Haddad is a "person" within the meaning of 20 U.S.C. §1681(a).

441.    Defendant Troy School District receives financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681, *et seq.*

442.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students, and third parties.

443.    In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds

intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent to known acts of teacher-student discrimination."

444.    In *Davis v. Monroe County Board of Education*, 526 U.S. 629, at 648 (1999), the United States Supreme Court held that a school district's response or lack to sexual harassment can be actionable when it is shown to be "…clearly unreasonable in the light of the known circumstances…"

445.    Defendant Debandt's actions and conduct while an employee action and/or ostensible agent of Defendant Troy School District were carried out under one of Defendant Troy School District's programs.

446.    Defendant Debandt's sexual harassment, assault, battery and/or molestation of Plaintiff Megan Haddad, constitutes sexual discrimination and harassment under Title IX, and subjected Plaintiff Megan Haddad to a sexually hostile environment.

447.    Pursuant to Title IX, Defendant Troy School District is obligated and required to investigate all allegations of sexual assault, battery, molestation, and harassment, including allegations that sexual assault, battery, molestation, and harassment that has been committed by an employee, student or third party.

448.    Defendant Troy School District owed Plaintiff Megan Haddad duties under Title IX, which duties included not to engage in and be deliberately indifferent to known sexual assault, battery, molestation, harassment, and other sexual misconduct.

449.    Upon information and belief, an "appropriate person" at Troy School District, within the meaning of Title IX, including, but was not limited to, Frank Pitts, Christi Manfredi, Mollie Debandt, and other teachers, administrators and counselors, had actual and/or constructive notice of sexual assault, battery, molestation and/or harassment

committed by Defendant Debandt, as described herein this Complaint.

450.   Defendant Troy School District, by and through its employees, failed to carry out their duties to investigate and take corrective action, as well as to make appropriate recommendations, under Title IX following their actual and/or constructive knowledge of sexual assault, battery, molestation and/or harassment, as described herein.

451.   Despite the Defendant Troy School District's employees', agents', and/or representatives' actual and/or constructive notice of the sexual assault, battery, molestation and/or harassment as described herein, the behavior went unaddressed, which violated reporting policies and procedures and Title IX, and was done in a manner that was reckless, grossly negligent, and deliberately indifferent.

452.   The Troy School District, by and through its employees, agents, and/or representatives acted with deliberate indifference and in a clearly unreasonable manner by failing to respond to the knowledge of sexual assault, abuse, molestation and/or harassment, in light of the known circumstances, Defendant Debandt's conduct and behavior toward female students, including Plaintiff Megan Haddad, and his continued unfettered access to young girls.

453.   The Troy School District's response, by and through its employees, agents and/or representatives, to the knowledge of at least one of its students being subject to sexual assault, abuse, molestation and/or harassment was clearly unreasonable as Defendant Debandt continued to sexually assault, abuse, molest and/or harass Plaintiff Megan Haddad.

454.   The Troy School District, by and through its employees, agents and/or representatives, had actual and constructive knowledge of, but were recklessly and

deliberately indifferent to, Defendant Debandt's sexual assault, battery, molestation, and/or harassment in 2004/2005.

455.   The Troy School District's failure, by and through its employees, agents, and/or representatives, to formally investigate and take corrective actions to repeated complaints of Defendant Debandt's sexual assault, battery, molestation, and/or harassment resulted in Plaintiff Megan Haddad being subjected to further sexual assault, battery, molestation, and/or harassment, and a sexually hostile environment, effectively denying her access to educational opportunities in the Troy School District.

456.   The Troy School District failed to adequately supervise Defendant Debandt even though they had actual and/or constructive knowledge, by and through its employees, agents, and/or representatives, that Defendant Debandt posed a substantial risk of additional sexual abuse of at least one female student whom he had unfettered access to.

457.   Specifically, the Troy School District also violated Title IX by, *inter alia*:

a) Ignoring the actual and constructive notice that Defendant Debandt's substantial risk of sexually abusing and harassing female students, including Plaintiff Megan Haddad, or being deliberately indifferent thereto;

b) Ignoring the reports that Defendant Debandt had inappropriately touched and harassed Plaintiff Megan Haddad or being deliberately indifferent thereto;

c) Failing to investigate the many reports of Defendant Debandt's sexual misconduct, or being deliberately indifferent thereto;

d) Requiring Plaintiff Megan Haddad to protect herself from sexual harassment and abuse perpetrated by Defendant Debandt;

e) Creating a climate that tolerated sexual harassment against Plaintiff Megan Haddad, or being deliberately indifferent thereto;

f) Failing to discipline Defendant Debandt for his sexual misconduct against female students, including Plaintiff Megan Haddad, or being deliberately indifferent thereto;

g) Failing to increase supervision or monitoring of Defendant Debandt after his sexual misconduct and harassment was known, or being deliberately indifferent thereto;

h) Failing to report Defendant Debandt to Child Protective Services or law enforcement, despite the fact that District administrators are mandated reporters;

i) Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services Plaintiff Megan Haddad after she was sexually harassed and/or assaulted by Debandt, or being deliberately indifferent thereto; and

j) Through other actions, inaction, and deliberate indifference.

458.   Defendant Troy School District's deliberate indifference, by and through its employees, agents, and/or representatives, before, during, and after the sexual assault, battery, molestation, and/or harassment of Plaintiff Megan Haddad was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

459.   As a direct and proximate result of the Troy School District's actions and inactions, by and through its employees, agents, and/or representatives, Plaintiff Megan Haddad has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

460.   In the alternative, the actions or inaction of the Troy School District, by and through its employees, agents, and/or representatives, was deliberately indifferent or so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff Megan Haddad and constitutes gross negligence that is the proximate cause of Plaintiff Megan Haddad's damages. Plaintiff Megan Haddad has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic life stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries.   Plaintiff was prevented and will continue to be prevented from performing her daily activities and obtaining full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT FOURTEEN - VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983 – BODILY INTEGRITY

### (Against Defendant Debandt and Defendant Troy School District)

461.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

462.   Plaintiff Megan Haddad, as a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

463.   Plaintiff Megan Haddad enjoys the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, battery,

molestation, and harassment under the Fourteenth Amendment to the United States Constitution.

464.    At all times pertinent hereto, Defendant Troy School District, by and through its employees, agents, and/or representatives, and Defendant Debandt were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Troy School District.

465.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the Defendants' positions should have known.

466.    As a matter of custom, policy, and/or practice, Defendant Troy School District, by and through its employees, agents, and/or representatives, had the ultimate responsibility and authority to investigate actual and/or constructive notice of impropriety, harassment or sexual assault of students by Defendant Debandt, and failed to do so with deliberate indifference.

467.    The Troy School District's failure, by and through their employees, agents and/or representatives, to investigate the sexual harassment or assault of Plaintiff Megan Haddad by Defendant Debandt and continuing to give him unfettered access to her deprived Plaintiff Megan Haddad of her constitutional rights.

468.    Defendant Troy School District had a duty to prevent sexual assault, abuse, harassment and molestation of Troy School District students, those duties arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

469.   Defendant Troy School District's failure to address Defendant Debandt's abuse led to an unknown number of individuals (aside from the Plaintiff Megan Haddad) being victimized, sexually assaulted, abused and/or molested by him.

470.   Defendant Troy School District employees, agents, representatives and administrators, including, but not limited to, Frank Pitts', Christi Manfredi's, and Mollie Debandt refused to take the appropriate and necessary action in response to legitimate and credible claims and/or knowledge of sexual assault, molestation and/or harassment of Plaintiff Megan Haddad by Defendant Debandt, resulted in continued violations of her constitutional rights, including her Due Process right to bodily integrity, which includes the right to be free from sexual assaults, molestation and harassment.

471.   Defendant Troy School District, and by and through its employees, agents, representatives and administrators, failed to adequately and properly investigate the complaints of Plaintiffs or other similarly situated individuals including, but not limited to failing, to:

a) Perform a thorough and formal investigation into improper conduct by Defendant Debandt with Plaintiff Megan Haddad after repeatedly witnessing Defendant Debandt sexually assault, molest, and/or harass Plaintiff Megan Haddad and talk to them both about the sexual assault, molestation, and/or harassment in 2004/2005;

b) Thoroughly review and investigate all policies, practices, procedures, and training materials related to the circumstances surrounding the conduct of Defendant Debandt;

c) Recognize sexual assault when witnessed and had actual and/or constructive knowledge of the sexual assault in 2004/2005 and permitted administrators, employees, agents and representatives, to deem sexual assault as not of a sexual nature or a crime; and

d) Failing to report the sexual harassment and assaults to the appropriate legal authorities;

e) Failing to report the sexual harassment and assaults to the Title IX coordinators, superintendent, and/or Board of Education; and

f) Failing to put in place institutional guidelines.

472.    The Troy School District had a culture that permitted a sexually hostile environment to exist affecting Plaintiff, Megan Haddad, and potentially others on Defendant Troy School District's property.

473.    By failing to prevent the aforementioned sexual assault, abuse, harassment and/or molestation upon Plaintiff Megan Haddad, and by failing to appropriately respond to Defendant Debandt's sexual assault, abuse, harassment and/or molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, Defendant Troy School District is liable to Plaintiff Megan Haddad pursuant to 42 U.S.C. § 1983.

474.    Defendant Troy School District is also liable to Plaintiff Megan Haddad under 42 U.S.C. § 1983 for maintaining customs, policies, and practices which deprived Plaintiff Megan Haddad of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

475.    Defendant Troy School District tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Debandt, with the result that Defendant Debandt was allowed to violate the constitutional rights of persons such as Plaintiff Megan Haddad with impunity.

476.    As a direct and proximate result of Defendant Troy School District's and Defendant Debandt's actions and/or inactions, Plaintiff Megan Haddad has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

477.    In the alternative, the actions or inactions of Defendant Troy School District and Defendant Debandt, were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff Megan Haddad and constitutes gross negligence that is the proximate cause of her damages. Plaintiff Megan Haddad has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff Megan Haddad was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT FIFTEEN - FAILURE TO SUPERVISE, 42 U.S.C. § 1983

### (Against Defendant Troy School District)

478.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

479.    Defendant Troy School District had and has the ultimate responsibility and authority to supervise its employees, agents, and/or representatives, including Frank Pitts, Christi Manfredi, Mollie Debandt, Defendant Debandt and all faculty and staff,

regarding their duties toward students, faculty, staff, and visitors.

480.    Defendant Troy School District failed to supervise its employees, agents, and/or representatives, including all faculty and staff, regarding the following duties:

- a) Perceive, report, and stop inappropriate sexual conduct in the district;

- b) Provide diligent supervision over students;

- c) Report suspected incidents of sexual abuse, sexual harassment and sexual assault;

- d) Ensure the safety of all students, faculty, staff, and visitors to Defendant Troy School District properties;

- e) Provide a safe environment for all students, faculty, staff, and visitors to Defendant Troy School District's properties free from sexual harassment and assault; and,

- f) Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

- g) The above list of duties is not exhaustive.

481.    Defendant Troy School District also failed to adequately train teachers, counselors, support staff, and others regarding the aforementioned duties which led to violations of Plaintiff Megan Haddad's rights.

482.    Defendant Troy School District's failure to adequately supervise was the result of its deliberate indifference toward the well-being of students.

483.    Defendant Troy School District's failure to adequately supervise is closely related to or actually caused Plaintiff Megan Haddad's injuries.

484.    As a result, Defendant Troy School District deprived Plaintiff Megan Haddad of rights, including those described herein, secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

485.    As a direct and proximate result of Defendant Troy School District's actions and/or inactions, Plaintiff Megan Haddad has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

486.    In the alternative, the actions or inactions of the Defendant Troy School District were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff Megan Haddad and constitutes gross negligence that is the proximate cause of her damages. Plaintiff Megan Haddad has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff Megan Haddad was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT SIXTEEN - FAILURE TO TRAIN, 42 U.S.C. § 1983

### (Against Defendant Troy School District)

487.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

488.   Children, like Plaintiffs were at the time of the events at issue in this case, have a well-established right to be free from teacher sexual abuse, which violates a child's right to personal security and bodily integrity guaranteed by the Fourteenth Amendment to the U.S. Constitution.

489.   The U.S. Supreme Court holds, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and that "a plaintiff may bring causes of action under both Title IX and 42 U.S.C. § 1983 for unlawful sex discrimination."

490.   At all relevant times hereto, Defendant Troy School District was a policymaker having a duty to train, and failed to properly or sufficiently train administrators, teachers, staff, students, security personnel, and/or parents, concerning school employee sexual harassment and misconduct against students and identifying, investigating, reporting, and stopping inappropriate conduct like that of Debandt against Troy School District students like Plaintiff Megan Haddad.

491.   At all relevant times hereto, Defendant Troy School District was a policymaker having a duty to train, and failed to properly or sufficiently train administrators, teachers, staff, students, security personnel and parents regarding any written policies that would prevent or prohibit actions like those taken by Defendant Debandt against Plaintiff Megan Haddad.

492.   Defendant Troy School District failed to provide such training to administrators, teachers, staff, students, security personnel and parents despite the obvious need for training.

493.   Numerous authorities, including the U.S. Supreme Court, Sixth Circuit, and U.S. Department of Education, made clear and gave notice to Defendant Troy School District that school employees will confront student sexual harassment and abuse with regularity, given the high predictability, recurrence, prevalence, and injurious nature of school affiliate-against-student sexual assault, abuse, and harassment in schools.

494.   Defendant Troy School District failed to adequately train its administrators, teachers, staff, students, security personnel and parents, and thereby prohibit or discourage foreseen sexual misconduct, despite the clearly established and well-known dangers of sexual abuse, harassment, assault, and battery faced by students in U.S. public schools, and thereby was deliberately indifferent.

495.   Defendant Troy School District failed to provide such training in light of foreseeable consequences that could result from a lack of instruction, including, but not limited to, teacher sexual harassment against students like Plaintiff Megan Haddad.

496.   Defendant Troy School District's failure to train its administrators, teachers, staff, students, security personnel and parents effectively denied Plaintiff Megan Haddad's established Constitutional rights.

497.   Defendant Troy School District's failure to train administrators, staff, teachers, students, security personnel and parents and in callous indifference to Plaintiff Megan Haddad's Constitutional rights.

498.   As a direct and proximate result of Defendant Troy School District's actions, inactions, and deliberate indifference to and violation of Plaintiff Megan Haddad's established Constitutional rights, she suffered, and continues to suffer, injuries for which she is entitled to be compensated, including pain of mind and body, mental anguish,

shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT SEVENTEEN - VIOLATIONS OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL § 37.2101 (SEX DISCRIMINATION)
### (Against Defendant Troy School District and Defendant Debandt)

499.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

500.   The Elliott-Larsen Civil Rights Act ("Elliott-Larsen") prohibits discrimination based on sex.  MCL 37.2102.

501.   "Discrimination because of sex includes sexual harassment." MCL 37.2103(i).

502.   "Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2103 (i).

503.   Elliott-Larsen protects against sexual harassment in educational institutions.

504.   Defendant Debandt was a "person" as that term is defined in Elliott-Larsen and was an agent and/or affiliate of Defendant Troy School District.

505.   Defendant Troy School District, including Troy Athens High School, are educational institutions as defined by Michigan's Elliott-Larsen Civil Rights Act, pursuant

to MCL § 37.2101 *et seq.*

506.    An educational institution shall not "discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2401(a).

507.    Elliott-Larsen also protects against sexual harassment in places of public accommodation. MCL 37.2302.  Under this section, an individual shall not be denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex." MCL 37.2302(a).

508.    Defendant Troy School District's high school is a "place of public accommodation" because its "services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2301(a).

509.    Plaintiff Megan Haddad is a "person" within the meaning of MCL 37.2103(g).

510.    Defendant Debandt's actions and conduct were carried out under one of Troy School District's programs, specifically its theater program.

511.    Defendant Debandt's actions and conduct toward Plaintiff Megan Haddad denied her the full and equal enjoyment of Troy School District's services at a place of public accommodation, in violation of Elliott-Larson.

512.    Defendant Debandt's actions and conduct toward Plaintiff Megan Haddad of nonconsensual sexual assault, harassment, battery, and molestation, which includes unconsented sexual touching and digital penetration of her vagina, constitutes sex discrimination under Elliott-Larsen.

513.    As a direct and proximate result of the Defendants' actions and/or inactions, Plaintiff Megan Haddad has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

514.    In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff Megan Haddad and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff Megan Haddad has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff Megan Haddad was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT EIGHTEEN- VIOLATION OF ARTICLE 1, § 17 SUBSTANTIVE DUE PROCESS – BODILY INTEGRITY

### (Defendant Troy School District and Defendant Debandt)

515.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous and subsequent paragraphs.

516.    The Due Process Clause of the Michigan Constitution provides, in pertinent part, that "[n]o person shall…be deprived of life, liberty or property, without due process of law . . . ." Const. 1963, art 1, § 17.

517.    The due process guarantee of the Michigan Constitution is coextensive with its federal counterpart.  The doctrine of substantive due process protects enumerated fundamental rights and liberties under the Due Process Clause of the Fourteenth Amendment of the Const. 1963, art 1, § 17.

518.    The substantive component of due process encompasses, among other things, an individual's right to bodily integrity free from unjustifiable government interference.

519.    In a long line of cases, courts have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the right of bodily integrity.

520.    The right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process and Const. 1963, art 1, § 17.

521.    The violation of the right to bodily integrity involves an egregious, nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective.

522.    The United States Supreme Court and the Michigan appellate courts have recognized that no right is held more sacred, or is more carefully guarded, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

523.   The violation of the right to bodily integrity must be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.

524.   Defendant Debandt violated Plaintiff Megan Haddad right to bodily integrity for the reasons set forth above, and cause severe and permanent damages to her.

525.   Defendant Troy School District's official policies, customs and practices violations included:

a) Failing to supervise, train and educate Defendant Debandt, Debandt's supervisors and administrators and/or Debandt's students or their parents, including, but not limited to Frank Pitts, Christi Manfredi, and Mollie Debandt, so that in the absence of this supervision, training and education Debandt's unlawful activities could be carried out;

b) Actively concealing Defendant Debandt's abhorrent behavior;

c) Purposefully placing Defendant Debandt in the position of authority to minor female students, despite knowing he sexually preyed on minor female students, further enabling Debandt to have unfettered sexual access to more students; and

d) Not removing Defendant Debandt from his position of authority over minor female students.

526.   Defendant Troy School District's policies, customs, and practices of permitting and condoning Defendant Debandt's sexual predator behavior, which enabled him to gain unfettered sexual access to minor female students, exposed students to unspeakable invasions of their bodily integrity which were so egregious and outrageous that it shocks the conscience.

527.   The decisions which resulted in Defendant Troy School District violating Plaintiff Megan Haddad's constitutional rights as alleged in this Complaint were made by high level officials of Defendant Troy School District.

## COUNT NINTEEN - INVASION OF PRIVACY - INTRUSION

### (Against Defendant Debandt)

528.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

529.     Defendant Debandt intruded upon Plaintiffs' seclusion or solitude by sexually assaulting, abusing, harassing and/or molesting Plaintiffs without the consent of Plaintiffs or Plaintiffs' parents.

530.     Plaintiffs' genital areas and sexual activity are secret and private subject matters.

531.     Plaintiffs possessed a right to keep these subject matters private.

532.     Defendant Debandt's method of sexually grooming, assaulting, abusing, harassing and/or molesting Plaintiffs is objectionable to a reasonable person.

533.     As a direct and proximate result of Defendant Debandt's invasion of Plaintiffs' privacy, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

## COUNT TWENTY - ASSAULT & BATTERY

### (Against Defendant Debandt)

534.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

535.     The acts committed by Defendant Debandt against Plaintiffs described

herein constitute assault and battery, actionable under the laws of Michigan.

536.   Defendant Debandt committed nonconsensual sexual acts which resulted in harmful or offensive contact with the bodies of Plaintiffs.

537.   Specifically, Defendant Debandt committed acts which caused injury to Plaintiffs by subjecting them to an imminent battery and/or intentional invasions of their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant Debandt had a present ability to subject Plaintiffs to an immediate, intentional, offensive and harmful touching and harassing.

538.   Defendant Debandt assaulted and battered Plaintiffs by nonconsensual and unwanted touching, groping, sharing of pornographic images, and/or oral penetration without notice or explanation.

539.   Plaintiffs did not consent to the contact and sharing of pornographic images, which caused injury, damage, loss, and/or harm.

540.   As a direct and proximate result of Defendant Debandt's assaults and batteries, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

## DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

541.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

542.    As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

543.    The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' constitutional and federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

544.    In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

**WHEREFORE**, Plaintiffs request this Court and the finder of fact to enter a Judgment in Plaintiffs' favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seek against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby request that the trier of fact, be it judge or jury, award Plaintiffs all applicable damages, including but not limited to compensatory, special, exemplary, and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)      Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiffs' constitutional, federal, and state rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)      Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)      Reasonable attorney fees, interest, and costs; and

d)      Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Respectfully submitted,

By: */s/ Lisa M. Esser*
LISA M. ESSER (P70628)
SOMMERS SCHWARTZ, P.C.
Attorney for Plaintiffs
1 Towne Square, Suite 1700
Southfield, MI 48076
Tel: (248) 355-0300
Email: lesser@sommerspc.com

Dated: October 7, 2020

## **JURY DEMAND**

Plaintiffs, by and through their attorneys, SOMMERS SCHWARTZ, P.C., hereby

demand a trial by jury on all claims set forth above.

By: */s/ Lisa M. Esser*_____
LISA M. ESSER (P70628)
SOMMERS SCHWARTZ, P.C.
Attorney for Plaintiffs
1 Towne Square, Suite 1700
Southfield, MI 48076
Tel: (248) 355-0300
 Email: lesser@sommerspc.com

Dated: October 7, 2020