## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

EMMALEE FORRESTER, *et al.*,

        Plaintiffs,

v.                               Case No. 20-12727

CLARENCEVILLE SCHOOL DISTRICT,
*et al.*,

        Defendants.
_____/

### OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiffs are nine former students at Defendant Clarenceville School District who were allegedly harassed and assaulted by a choir and theater teacher between 2008 and 2018. Plaintiffs bring claims against the school district, school administrators, and the choir teacher, and they allege violations of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.*, the Fourteenth Amendment, 42 U.S.C. § 1983, Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.*, the Due Process Clause of the Michigan Constitution, and Michigan's Child Protection Law, Mich. Comp. Laws § 722.621, *et seq.* (ECF No. 13.) They also bring claims under gross negligence, negligence, invasion of privacy, and assault and battery. (*Id.*)

Defendant school district and school administrators have filed a motion to dismiss. (ECF No. 21.) They claim that many of the alleged harassment and assaults are time barred and that Plaintiffs' negligence and gross negligence claims against Defendants Clarenceville School District and Defendant Paul Shepich, Superintendent

of Clarenceville School District, are barred on immunity grounds. The matter has been

thoroughly briefed. (ECF Nos. 36, 37.) The court has reviewed the record and does not

find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below,

Defendants' motion will be granted in part.

## I.  BACKGROUND

The following are facts as alleged in Plaintiffs' complaint. In a motion to dismiss,

the court accepts Plaintiffs' factual allegations as true but makes no overt finding as to

truth or falsity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs are nine former students of Clarenceville Middle School and High

School, where Defendant Jason Debandt taught choir and theater. (ECF No. 13,

PageID.141-42.) Plaintiffs allege separate instances of sexual assault and harassment

by Defendant Debandt; the events giving rise to Plaintiffs' claims took place at different

times. Nonetheless, the alleged experiences of Plaintiffs show a similar pattern.

Defendant Debandt allegedly showed favoritism to Plaintiffs in his position as a

school instructor, purchasing them food and clothing and inviting Plaintiffs into his office

during school hours. (*Id.*, PageID.141-42, 158-74.) He communicated privately with

Plaintiffs through text messages and social media. (*Id.*) Over time, the messages

became more sexually explicit, and eventually, Defendant Debandt made open sexual

advances, commented on Plaintiffs' appearance, and touched Plaintiffs in a sexual

manner. (*Id.*) When Plaintiffs rebuffed Defendant Debandt's advances, he allegedly

retaliated against Plaintiffs by using his authority as a teacher to create a hostile

learning environment. (*Id.*) Defendant Debandt engaged in sexual acts with several

Plaintiffs. (*Id.*)

The alleged sexual harassment and assaults took place over the course of several years. For example, according to the complaint, Defendant Debandt abused Plaintiff Katelyn Estepp between 2009 and 2012, and he abused Plaintiff Justyse Perry between 2014 and 2018. (*Id.*, PageID.159-61, 164-66.)

Plaintiffs allege that between 2010 and 2018 several teenage girls, including four Plaintiffs, notified Defendant Troy Nelson, the principal of Clarenceville High School, and Defendant Alan Kantor, the assistant principal, of Defendant Debandt's sexual advances and harassment. (*Id.*, PageID.174-81.) According to Plaintiffs, despite claiming that they would investigate the complaints, Defendants Nelson and Kantor neither initiated an internal investigation nor contacted law enforcement. (*Id.*)

Plaintiffs initiated this lawsuit on October 7, 2020. (ECF No. 1.)

## II.  STANDARD

Under Rule 12(b)(6), a party can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing motions under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must present "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "[A] formulaic recitation of a cause of action's elements will not do." *Id.*

When reviewing a motion to dismiss, the court "may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). However, the court may consider "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider "a document that is not formally incorporated by reference or attached to a complaint" when "[the] document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

Federal Rule of Civil Procedure 9(f) makes "allegation[s] of time or place . . . material when testing the sufficiency of a pleading." A complaint is subject to dismissal "where the face of the complaint discloses a failure to file within the time allowed." *Hoover v. Langston Equip. Ass., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992). If the complaint is time barred, "the plaintiff may come forward with allegations explaining why the statute of limitations should be tolled." *Id.* Like all plaintiffs opposing a motion to dismiss under Rule 12(b)(6), "[t]he allegations must be enough to raise a right to relief above the speculative level." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008). When "defendants have highlighted the apparent untimeliness of the complaint, plaintiffs may not simply rely on the bare assertion that they were unaware of the facts underlying their cause of action." *Id.*

## III. DISCUSSION

The school district and school administrators, Defendants Clarenceville School District, Shepich, Nelson, Kantor, Renee Valentine (Assistant Superintendent and Title IX Coordinator for the Clarenceville School District), and David Bergeron (Assistant Superintendent and Title IX Coordinator for the Clarenceville School District), advance two grounds for their motion to dismiss.[1] First, they argue that Plaintiffs' gross negligence and negligence claims (Counts 7-11) against Defendants Clarenceville School District and Shepich are barred under Michigan's Governmental Tort Liability Act, Mich. Comp. Laws § 691.1407. (ECF No. 21, PageID.378-83.) Plaintiffs, in the response, agree to dismissal of the claims.[2] (ECF No. 36, PageID.521.) Thus, dismissal is warranted for Plaintiffs' counts of gross negligence and negligence against Defendants Clarenceville School District and Shepich.[3]

Second, Defendants argue that many of the abusive acts detailed in the complaint are barred by statutes of limitation. (ECF No. 21, PageID.367-70.) According

---

[1]    Defendant Debandt did not join in the motion.

[2]    In the motion to dismiss, Defendants state, pursuant to Local Rule 7.1(a), that they sought concurrence from Plaintiffs on the relief requested in their motion. (ECF No. 21, PageID.349.) Plaintiffs admit that they denied concurrence. (ECF No. 36, PageID.491.) Nonetheless, after Defendants filed their motion, Plaintiffs stated that they were actually in agreement and believed dismissal of the negligence claims against Defendants Clarenceville School District and Shepich was justified. Local Rule 7.1(a) mandates that parties engage in good-faith discussions before filing a motion. Here, either Defendant did not adequately explain the nature of the motion or Plaintiffs did not fully engage in efforts to reach areas of agreement without the need of a motion. Motions that are not contested constitute a waste of the court's time and impose unnecessary legal costs on clients. Counsel are admonished to avoid the unwarranted withholding of concurrence.

[3]    As explained below, the court will decline supplemental jurisdiction and dismiss all of Plaintiffs' state claims without prejudice. *See infra* Section III.C.

to Defendants, five Plaintiffs are time barred completely while four Plaintiffs can bring claims accruing only after October 6, 2017, three years prior to the date that Plaintiffs filed their complaint. (*Id.*, PageID.370.)

Defendants analyze Plaintiffs' claims in five categories: Plaintiffs' claim under § 1983 (Counts 2-4), Title IX (Count 1), ELCRA (Count 5), gross negligence and negligence (Counts 7-11), and Michigan's Child Protection Law (Count 12). (*Id.*, PageID.367.)

The applicable statute of limitations for Plaintiffs' § 1983 claims is three years. "[Section] 1983 claims are best characterized as tort actions for the recovery of damages for personal injury and . . . federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). When § 1983 claims arise in Michigan, as Plaintiffs' claims do in this instance, "the appropriate statute of limitations . . . is [Michigan's] three-year limitations period for personal injury claims." *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (citing Mich. Comp. Laws § 600.5805); *accord Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020). Federal law governs when the statute of limitations accrues. *Cooey*, 479 F.3d at 416.

Like constitutional claims brought under § 1983, the applicable statute of limitations for Title IX claims is "the state personal injury limitations period." *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996). In Michigan, that period is three years. *See Wolfe*, 412 F.3d at 714. Courts also use the same federal accrual rules for Title IX as they do for § 1983. *See*, *e.g.*, *Dibbern v. Univ. of Mich.*, Case No. 12-15632, 2016 WL 2894491, at *18 (E.D. Mich. May 18, 2016) (Cox, J.); *Haley v.*

*Clarksville-Montgomery Cnty. Sch. Sys.*, 353 F. Supp. 3d 724, 734 (M.D. Tenn. 2018) ("The analysis concerning when the statute of limitations [for a Title IX claim] began to run is the same as [a § 1983 claim].").

Claims that arise under state law are governed by state statutes of limitation. *See*, *e.g.*, *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1109 (6th Cir. 2012) (applying state statute of limitations to a state claim and federal statute of limitations to a federal claim). Michigan's general private injury statute of limitations governs Plaintiffs' claims under ELCRA, negligence, and the Child Protection Law. *See* Mich. Comp. Laws § 600.5805(2); *Stephens v. Worden Ins. Agency, LLC*, 859 N.W.2d 723, 732 (Mich. Ct. App. 2014) (holding that negligence claims are governed by the general three-year statute of limitations); *Major v. Vill. of Newberry*, 892 N.W.2d 402, 410 (Mich. Ct. App. 2016) (finding that the three-year statute of limitations applies to ELCRA claims). Similarly, accrual for state claims is governed by state law. *See*, *e.g.*, *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (differentiating accrual rules for Kentucky civil rights claims and § 1983 claims); *Wolfe v. Perry*, 412 F.3d 707, 715 (6th Cir. 2005) (applying federal accrual rules to a § 1983 claim and Michigan's accrual rules to a Michigan civil rights claim); *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (relying on Tennessee accrual law for Tennessee claims). Thus, Michigan law governs accrual for Plaintiffs' state claims.

The parties dispute when Plaintiffs' claims accrue, whether the statute of limitations can be tolled due to fraudulent concealment, and whether Michigan's statute of limitations for criminal sexual conduct extends the limitations period. The court will address each issue in turn.

### A.  Accrual

First, the parties contest when Plaintiffs' claims accrued. For the federal claims,

courts use the "standard rule" of accrual. *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th

Cir. 2014). "[A] cause of action accrues when the plaintiff has a complete and present

cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* The

Supreme Court has repeatedly refused to interpose the "discovery rule" to accrual

standards for federal claims. Under the discovery rule, although the elements of a claim

are complete and the claim can be successfully alleged in court, the claim does not

accrue until the plaintiff knew or should have known of the facts giving rise to the claim.

The Supreme Court in *TRW Inc. v. Andrews* noted that while many federal courts "apply

a discovery accrual rule when a statute is silent on the issue," the Court "has not

adopted that position as [its] own." 534 U.S. 19, 27 (2001). In *Rotkiske v. Klemm*, the

Court referred to use of the discovery rule, where no statutory provision expressly

established discovery as the date of accrual, as a "bad wine of recent vintage." 140 S.

Ct. 355, 360 (2019) (quoting *TRW Inc.*, 534 U.S. at 37 (Scalia, J., concurring) ("That a

person entitled to an action has no knowledge of his right to sue, or of the facts out of

which his right arises, does not postpone the period of limitation.")).

The Supreme Court in *Wallace v. Kato* explained the basis for not applying the

discovery rule in the context of § 1983 litigation:

> Under the traditional rule of accrual the tort cause of action accrues, and
> the statute of limitations commences to run, when the wrongful act or
> omission results in damages. The cause of action accrues even though
> the full extent of the injury is not then known or predictable. Were it
> otherwise, the statute would begin to run only after a plaintiff became
> satisfied that he had been harmed enough, placing the supposed statute
> of repose in the sole hands of the party seeking relief.

8

549 U.S. 384, 391 (2007) (citing 1 C. Corman, Limitation of Actions § 7.4.1, 526-27

(1991)). In *McDonough v. Smith*, the Supreme Court explained the basic principles for

determining accrual dates for § 1983 claims, and the Court neither mentioned nor relied

on the discovery rule to determine the accrual of § 1983 claims. 139 S. Ct. 2149, 2155

(2019).

Despite these indications from the Supreme Court that, absent a statutory

directive, federal law does not apply the discovery rule to accrual of federal claims, the

Sixth Circuit has historically applied the discovery rule to § 1983 claims. "[A]s developed

in this Circuit, the statute of limitations period begins to run [for § 1983 claims] when the

plaintiff knows or has reason to know that the act providing the basis of his or her injury

has occurred." *Cooey*, 479 F.3d at 416. The Sixth Circuit recently recognized this

apparent discrepancy:

> The "standard" accrual "rule" for federal claims starts the limitations period
> "when the plaintiff has a complete and present cause of action" that can
> be raised in court. The Supreme Court has contrasted [the] "standard" rule
> with a "discovery" rule that ties the start of the limitations period to when
> the plaintiff discovered (or should have discovered) the cause of action. . .
> . In this § 1983 context, the Court has started its accrual analysis with the
> standard rule: that a claim accrues when the plaintiff has a complete
> cause of action. Our § 1983 caselaw, by contrast, has started the accrual
> analysis with the competing discovery rule: that the claim accrues when
> the plaintiff knows of, or should have known of, that cause of action.

*Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021). The court in *Dibrell*

declined to "resolve this tension" because the claims at issue were barred even if the

discovery rule were applied. *Id.*

By comparison, Plaintiffs' state claims, which are governed by Michigan's accrual

rules, rely solely on the standard rule of accrual; the discovery rule does not apply.

Michigan's general three-year statute of limitations for personal injury claims, Mich.

Comp. Laws § 600.5805(2), covers ELCRA, negligence, and Child Protection Law

claims, and accrual for the general personal injury statute of limitations is governed by

Mich. Comp. Laws § 600.5827:

> [T]he claim accrues at the time the wrong upon which the claim is based
> was done regardless of the time when damage results.

*See*, *e.g.*, *Garg v. Macomb Cnty. Cmty. Health Servs.*, 472 Mich. 263, 696 N.W.2d 646,

657 (2005) (applying Mich. Comp. Laws § 600.5827 to ELCRA claims); *Stephens*, 859

N.W.2d at 733 (citing Mich. Comp. Laws § 600.5827 as the accrual standard for

negligence claims). Under this provision, "[t]he wrong is done," and a claim accrues,

"when the plaintiff is harmed." *Henry v. Dow Chem. Co.*, 501 Mich. 965, 905 N.W.2d

601 (2018). In *Trentadue v. Buckler Lawn Sprinkler*, the Michigan Supreme Court

considered and explicitly rejected use of the discovery rule for claims covered by the

general personal injury statute of limitations, Mich. Comp. Laws § 600.5827. 479 Mich.

378, 738 N.W.2d 664, 672 (2007) ("[W]e conclude that courts may not employ an

extrastatutory discovery rule to toll accrual in avoidance of the plain language of MCL

600.5827."); *accord Frank v. Linker*, 500 Mich. 133, 894 N.W.2d 574, 582 (2017)

(quotations removed) ("[C]ourts may not employ an extrastatutory discovery rule to toll

accrual.").

Here, the complaint was filed on October 7, 2020. Defendants assert that any

harms accruing before October 7, 2017 are time barred. (ECF No. 21, PageID.369.)

Plaintiffs present no arguments that, under the standard rule, their claims accrued after

October 6, 2017. As Plaintiffs explain in their response, they allege Defendants failed to

act to prevent Defendant Debandt from abusing Plaintiffs, and in this way, Defendants

facilitated and were deliberately indifferent to the abuse. (ECF No. 36, PageID.511; ECF

No. 13, PageID.181-92.) The complaint states much of the alleged abuse took place

prior to October 7, 2017, and when Plaintiffs were abused, they were subject to harms

caused by Defendants' alleged negligence and indifference. (ECF No. 13, PageID.181-

92.) Plaintiffs accept that the injuries in this case are the alleged sexual assaults. (ECF

No. 36, PageID.513-14 (assigning the injury of "the assault" and "abuse" to Defendants'

alleged indifference).) As a matter of law, at the time of the abuse, Plaintiffs had "a

complete and present cause of action," in that "the wrongful act or omission [had]

result[ed] in damages" and "the plaintiff[s] [had been] harmed." *Wallace*, 549 U.S. at

388, 391; *Trentadue*, 738 N.W.2d at 667.

Plaintiffs focus their arguments on a separate issue. They assert that their claims

did not accrue when they were injured, but instead when they learned in August 2020

that Defendant Debandt abused many students and school administrators were notified

of the abuse and failed to stop it. (ECF No. 36, PageID.504-05, 513.) The argument

relies on the application of the discovery rule. At a minimum, the discovery rule does not

apply to Plaintiffs' state law claims. *See Trentadue*, 738 N.W.2d at 667; *Frank*, 894

N.W.2d at 582. Thus, accrual for the ELCRA and negligence claims began when

Plaintiffs were abused.

Even if the discovery rule applied to Plaintiffs' federal claims, the claims would

accrue when Plaintiffs knew Defendant Debandt committed the abuse. The Supreme

Court in *Rotella v. Wood* held that, when the discovery rule is applied, it is the

"discovery of the injury, not discovery of the other elements of a claim, that starts the

clock." 528 U.S. 549, 555 (2000). In that case, the Supreme Court noted that medical

malpractice and Racketeer Influenced and Corrupt Organizations Act ("RICO") claims

require complex and difficult proofs, often involving defendants with substantially greater knowledge of the events and nefarious activities that took place. *Id.* at 555-57. Nonetheless, even in the context of malpractice and RICO claims, the "discovery rule does not extend beyond the injury." *Id.* The Court explicitly rejected the argument that the discovery rule would extend beyond knowledge of the injury to knowledge of "the pattern of predicate acts" giving rise to a RICO conspiracy claim. *Id.* at 557.

The Sixth Circuit has similarly recognized that, "[u]nder the discovery rule, the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763-64 (2017); *see also DeShelter v. FCA US, LLC*, 790 F. App'x 664, 670 (6th Cir. 2019) (citing *Rotella*, 528 U.S. at 555-56) (noting that the discovery rule applies only to knowledge of the injury, "even if considerable enquiry and investigation may be necessary to discover the other elements"); *Guy v. Mercantile Bank Mortg. Co.*, 711 F. App'x 250, 253 (6th Cir. 2017) (applying the discovery rule by analyzing when the plaintiff knew of the injuries giving rise to the claims). The central inquiry is whether the "plaintiff has reason to know of his injury" and whether "he should have discovered [the injury] through the exercise of reasonable diligence." *Cooey*, 479 F.3d at 416.

Plaintiffs do not contest that they were aware of the abuse while it was ongoing, and that Defendant Debandt, their choir and theater teacher, was the individual committing the abuse. Further, Plaintiffs do not contest that they knew or should have known Defendant Debandt was an employee of Defendant Clarenceville School District and that Defendants Shepich, Nelson, Kantor, Valentine, and Bergeron were Defendant

Debandt's supervisors and had control over his conditions of employment. The complaint alleges that Defendant Debandt abused Plaintiffs for many years prior to October 7, 2017, and, in fact, several Plaintiffs came forward and reported the abuse to their families and school administrators. (ECF No. 12, PageID.158-81.) Thus, accepting the facts alleged in the complaint as true, *Ashcroft*, 556 U.S. at 678, Plaintiffs were aware of the harassment and assaults while they were ongoing, and any claims arising from the abuse accrued when Plaintiffs' injury occurred. *See Patterson*, 845 F.3d at 763-64; *Cooey*, 479 F.3d at 416. Like the medical malpractice and RICO plaintiffs described in *Rotella*, the fact that Plaintiffs did not know the extent or factual detail needed to prove the complex claims of supervisory liability under § 1983 and Title IX does not extend accrual under the discovery rule.[4] 528 U.S. at 555-56; *see also DeShelter*, 790 F. App'x at 670; *Guy*, 711 F. App'x at 253.

Plaintiffs argue that, at the time of the abuse, they did not know the full extent of Defendants' knowledge and culpability in failing to report or discipline Defendant Debandt. (ECF No. 36, PageID.513.) As explained above, even assuming that Plaintiffs were not aware of all the facts needed to prove that "the District acted with deliberate indifference to [the] assaults," Plaintiffs' claims accrued when they became aware of their injuries and the abuse. *See Guy v. Lexington-Fayette Urban Cnty. Gov't*, 488 F.

---

[4]     Likewise, any subjective ignorance Plaintiffs had that the predicate acts of abuse were legally blameworthy does not stop accrual of the statute of limitations. *See Rotella*, 528 U.S. at 555 (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)) (rejecting the argument that "ignorance of his legal rights" can delay accrual when the discovery rule applies); *Rotkiske*, 140 S. Ct. at 360 (quoting *TRW Inc.*, 534 U.S. at 37 (Scalia, J., concurring) ("That a person entitled to an action has no knowledge of his right to sue . . . does not postpone the period of limitation.")); *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994) ("The determination of the accrual date is an objective one.").

App'x 9, 15 (6th Cir. 2012) (applying the discovery rule and finding that claims of sexual abuse victims accrued when they knew of the abuse not when they knew the assailant's employer failed to report the abuse); *Anderson v. Bd. of Educ. of Fayette Cnty.*, 616 F. Supp. 2d 662, 668 (E.D. Ky. 2009) (relying on the discovery rule and holding that claims of sexual abuse victims against officials who failed to report the abuse accrued when the victims were "aware of . . . the abuse"); *Bowling v. Holt Pub. Schs.*, Case No. 16-1322, 2017 WL 4512587, at *2 (W.D. Mich. May 26, 2017) (finding that federal civil rights claims against a school for failing to protect a student from sexual abuse accrued when the student was assaulted); *Smith v. Tyler*, Case No. 19-721, 2021 WL 1176048 (W.D. Ky. Mar. 29, 2021) (reasoning that § 1983 claims against a supervisor for failing to take action or report sexual abuse of probationers by a probation officer accrued when "[t]he injury giving rise to [the] claims[,] the sexual abuse," occurred). (ECF No. 36, PageID.515, Plaintiffs' Response.) Plaintiffs had a "complete and present cause of action" prior to October 7, 2017, and the alleged abuse that occurred before that date is subject to a three-year statute of limitations. *D'Ambrosio*, 747 F.3d at 384.

### B. Fraudulent Concealment

Even though much of the alleged abuse occurred prior to October 7, 2017, Plaintiffs argue that their claims can be tolled under the fraudulent concealment doctrine. State tolling rules apply to Plaintiffs' claims brought under state law. *See Jarrett v. Kassel*, 972 F.2d 1415, 1423-24 n.6 (6th Cir. 1992) (noting that state law of fraudulent concealment applied to state law claims). Because § 1983 and Title IX borrow their statutes of limitation from state law, *Cooey*, 479 F.3d at 416, *Lillard*, 76 F.3d at 729, state tolling rules apply to the federal claims. *See Lundblad v. Celeste*, 874

14

F.2d 1097, 1104 (6th Cir. 1989), *vacated in part on other grounds*, 924 F.2d 627 (6th

Cir. 1991) ("In actions brought under section 1983, state tolling statutes apply where the

most nearly analogous state statute of limitations is borrowed."); *accord Lexington-*

*Fayette Urban Cnty. Gov't*, 488 F. App'x at 15 (quoting *Bd. of Regents v. Tomanio*, 446

U.S. 478, 484 (1980)) (alterations removed) ("In § 1983 actions[,] a state statute of

limitations and the coordinate tolling rules are in most cases binding rules of law.")

Michigan's standard for fraudulent concealment is stated in Mich. Comp. Laws §

600.5855:

> If a person who is or may be liable for any claim fraudulently conceals the
> existence of the claim or the identity of any person who is liable for the
> claim from the knowledge of the person entitled to sue on the claim, the
> action may be commenced at any time within 2 years after the person who
> is entitled to bring the action discovers, or should have discovered, the
> existence of the claim or the identity of the person who is liable for the
> claim, although the action would otherwise be barred by the period of
> limitations.

In order to toll a statute of limitations, the fraud "must be manifested by an

affirmative act or misrepresentation." *Prentis Family Found. v. Barbara Ann Karmanos*

*Cancer Inst.*, 698 N.W.2d 900, 909 (Mich. Ct. App. 2005). The defendant must have

"engaged in some arrangement or contrivance of an affirmative character designed to

prevent subsequent discovery"; "[m]ere silence is insufficient." *Id.* Under Federal Rule of

Civil Procedure 9(b), allegations of fraudulent concealment must be pled with

particularity. *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006); *accord*

*Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).

Plaintiffs' focus their argument in favor of fraudulent concealment on the

allegation that Defendants received "nine separate reports about Debandt's sexual

misconduct." (ECF No. 36, PageID.516.) They claim that Defendants' "inaction and

silence provides its own proof of concealment." (*Id.*, PageID.517.) However, Michigan courts have consistently rejected that very contention. It is well established under Michigan law that "[m]ere silence is insufficient" to successfully allege fraudulent concealment. *Prentis Family Found.*, 698 N.W.2d at 909; *The Reserve at Heritage Vill. Ass'n v. Warren Fin. Acquisition, LLC*, 850 N.W.2d 649, 665 (Mich. Ct. App. 2014) ("A plaintiff is required to plead more than mere silence."); *Dillard v. Schlussel*, 865 N.W.2d 648, 654-55 (Mich. Ct. App. 2014) ("Mere silence does not demonstrate fraudulent concealment."). Plaintiffs fail to cite to a single case that states the contrary. Defendants' alleged indifference to Defendant Debandt's abusive conduct and their failure to report do not, as a matter of law, allow for the tolling of Plaintiffs' statute of limitations. Several cases involving child sexual abuse demonstrate that Plaintiffs cannot use fraudulent concealment to toll their claims.

In *Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit*, the plaintiff alleged a priest sexually abused him while he was an alter boy. 692 N.W.2d 398, 401 (Mich. Ct. App. 2004). The plaintiff alleged that the church who employed the priest knew he abused other children in the past, reassigned the priest to other parishes to avoid detection, and failed to tell the public or the plaintiff of the priest's propensity for abuse. *Id.* at 406-07. The complaint in the case alleged that the church was negligent in failing to protect the plaintiff and acted with reckless disregard toward the potential that the priest would abuse children. *Id.* at 405-06. In a thorough opinion, the Michigan Court of Appeals held that the fraudulent concealment doctrine did not toll the plaintiff's claims as a matter of law. *Id.* at 408. The court explained that, according to the allegations in the complaint, the plaintiff knew or should have known that the priest was employed by

the church, the church supervised the priest, the church held the priest out as fit for his duties, and the abuse took place on the church's property. *Id.* at 406. The church's efforts to prevent public disclosure, and even the priest's statements to the plaintiff that abuse was "approved of by God," did not conceal from the plaintiff a "possible cause of action" that the church failed to protect or warn the plaintiff and was deliberately indifferent. *Id.* The court explicitly rejected the argument that the plaintiff did not know of other abuse victims because of the church's efforts to prevent disclosure. *Id.* at 407. "[The church's] knowledge of [the priest's] abuse of other children was not required for plaintiff to be aware of his causes of action against [the church]." *Id.* at 407. As shown by the facts alleged in the complaint, plaintiff knew or should have known he was abused by the priest and that the church could be held responsible. The court noted that knowledge of other victims was evidence that the plaintiff could have used to prove his claims of negligence and indifference, but, under Michigan law, "[i]t is not necessary that a party should know the details of the evidence by which to establish his cause of action." *Id.* at 407 (quoting *Lemson v. Gen. Motors Corp.*, 238 N.W.2d 414, 416 (Mich. Ct. App. 1975))

The facts of *Doe* are almost identical to Plaintiffs' claims in this case. Plaintiffs, like the plaintiff in *Doe*, assert that Defendants "[negligently] created and/or were deliberately indifferent to the sexually hostile environment that flourished within the school's drama and choir program." (ECF No. 36, PageID.511.) Similar to the plaintiff in *Doe*, Plaintiffs assert that Defendants failed to report Defendant Debandt's abuse or investigate his improper behavior. (*Id.*, PageID.517.) While, as Plaintiffs argue, those actions may be illegal under Title IX, § 1983, or state law, that does not demonstrate

17

that Defendants fraudulently concealed Plaintiffs' "possible cause of action." *Doe*, 692
N.W.2d at 406, 409 ("Although . . . not publicly announcing the abuse or reporting the
abusive priest to the appropriate authorities . . . may have implicated criminal activity, it
did not operate to conceal from plaintiff his civil causes of action against defendant.");
*see also Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1996)
(holding that a doctor's decision to not tell a patient of the risks of a treatment proved
the patient's underlying claim, not that the doctor "acted fraudulently to conceal her
potential cause of action"). In fact, the church in *Doe* took greater steps to prevent
public disclosure of abuse than what Plaintiffs allege Defendants did in this case. The
church in *Doe* allegedly knew the priest abused children, intentionally reassigned the
priest to different assignments to avoid detection, and chose not to disclose the abuse
to other children or the public. *Id.* at 406-07. Plaintiffs here focus principally on
Defendants' failure to investigate reports of abuse or refer the reports to government
authorities. (ECF No. 36, PageID.517.)

Plaintiffs allege they were abused by Defendant Debandt while he was a
schoolteacher after meeting Debandt as students in his classes. (ECF No. 13,
PageID.158-74.) The abuse developed from this student-teacher relationship, occurred
regularly on school property, and continued for many years, despite several Plaintiffs
going to the school administration to report and stop the abuse. (*Id.*) Assuming the
allegations in the complaint are true, *Ashcroft*, 556 U.S. at 678, both Plaintiffs here and
the plaintiff in *Doe* knew or should have known that the harassment and assaults took
place, that the abuse started and progressed while the assailant was working and
regularly while the assailant was on his employer's property, and knew or should have

known that the employer had authority to supervise and control the assailant's behavior. *Doe*, 692 N.W.2d at 406. (ECF No. 13, PageID.158-74.) Plaintiffs fail to identify allegations in the complaint that indicate otherwise. The fact that Defendants knew of other abuse victims but failed to tell Plaintiffs supports Defendants' alleged liability, not fraudulent concealment. *Doe*, 692 N.W.2d at 407. The holding and reasoning in *Doe* is directly on point, and fraudulent concealment is not applicable in this case.

Other Michigan Courts have declined to apply fraudulent concealment in similar cases of sexual abuse. In *Antos v. Diocese of Lansing*, the plaintiff was, like in *Doe*, an altar boy who was allegedly abused by a priest. Case No. 262137, 2005 WL 3050473, at *1 (Mich. Ct. App. Nov. 15, 2005). The plaintiff alleged the church officials who employed the priest were aware of the sexual abuse of young boys and "conspired to conceal [the priest's] conduct and criminal history." *Id.* at *1. Further, the plaintiff alleged that the church officials "affirmatively misrepresented" the nature of the sexual misconduct. *Id.* at *7. Unlike the plaintiff in *Doe*, the plaintiff in *Antos* alleged a civil conspiracy between church officials and priest to aid and abet the sexual abuse. *Id.* at *6. Nonetheless, the Michigan Court of Appeals held that fraudulent concealment did not apply. The court noted that it is "not necessary for [a plaintiff] to be aware that others had also been abused in order to have knowledge of the existence of his own causes of action against [supervisors and employers]." *Id.* at *2. The plaintiff "was aware of a possible cause of action against [church officials] at the time that the sexual abuse occurred," and he could not rely on fraudulent concealment to toll the statute of limitations. *Id.* at *6.

Here, Plaintiffs do not allege that Defendants actively worked and conspired with Defendant Debandt to conceal and further the abuse. Yet in *Antos*, even when a conspiracy is alleged, the court found that failure to report the abuse to the public, warn the victim, or acknowledge or address the abuse did not constitute fraudulent concealment. 2005 WL 3050473, at *1, 6-7. Accepting the allegations in the complaint as true, *Ashcroft*, 556 U.S. at 678, Plaintiffs, like the plaintiff in *Antos*, were aware of the sexual harassment and assaults, and fraudulent concealment does not apply. 2005 WL 3050473, at *1, 6. (ECF No. 13, PageID.158-74.) This is true whether or not they subjectively believed that it was worthwhile to notify authorities or bring a legal claim. *Antos*, 2005 WL 3050473, at *1, 6; *see also Doe*, 692 N.W.2d at 407-08 (noting that societal pressure and expectations of the "spiritual and moral" virtue of the church may have explained plaintiff's choice to not pursue a claim but did not amount to fraudulent concealment on the part of the church). (ECF No. 13, PageID.158-74.) As the court recognized in *Doe*, knowledge of other victims of abuse is not necessary to make Plaintiffs "aware of a possible cause of action" against Defendants, *Antos*, 2005 WL 3050473, at *2, 6, and Defendants' "mere silence" cannot support fraudulent concealment. *Prentis Family Found.*, 698 N.W.2d at 909; *see also Doe v. Bishop Foley Catholic High Sch.*, Case No. 336795, 2018 WL 2024589, at *7 (Mich. Ct. App. May 1, 2018) (holding that alleged victims of child sexual abuse had not alleged fraudulent concealment and noting that a plaintiff need not "be aware of all of the details of the evidence that would support a cause of action").

Similarly, in *Bromley v. Mallison*, the plaintiffs alleged that they were sexually abused when they were children. Case No. 312901, 2014 WL 667799, at *1 (Mich. Ct.

App. Feb. 18, 2014). The plaintiffs brought claims under negligence and intentional torts against the assailant and the assailant's wife, who the plaintiffs claimed "knew or should have known about the abuse." *Id.* The abuse was not discussed or publicly disclosed for many years, and the plaintiffs had only recently come together to share their experiences of abuse. *Id.* In the complaint, the plaintiffs claimed the assailant's wife "convinced one of the plaintiffs" that she had not suffered abuse. *Id.* The wife allegedly told one of the plaintiffs as a child that the child "must have been dreaming" when the child thought she was being abused. *Id.* at *5. The court noted that fraudulent concealment applies only where the defendant "employ[s] artifice" and prevents "acquirement of information disclosing a right of action." *Id.* Statements to child that allegedly convinced the child "that she was mistaken about what happened to her" did not constitute fraudulent concealment. *Id.* at *1, 5.

Although not the principal argument in Plaintiffs' response, they mention that Defendants told Plaintiffs, when they did report the alleged abuse, that Plaintiffs misunderstood Defendant Debandt's actions, that Debandt's actions were normal, and that Defendants would investigate the allegations. (ECF No. 36, PageID.519.) Plaintiffs alleged that multiple reports of abuse were made to Defendants Nelson and Kantor, and Defendants repeatedly told various Plaintiffs that they would investigate the allegations. (ECF No. 13, PageID.174-81.) Defendants Nelson and Kantor also responded to Plaintiffs' allegations that Defendant Debandt was frequently forming and adjusting erections in class by stating that men "adjust themselves." (*Id.*, PageID.175, 177-78.) Yet, as explained above, accepting all allegations in the complaint as true, *Ashcroft*, 556 U.S. at 678, Plaintiffs were aware of Defendant Debandt's harassment and assaults,

and Plaintiffs had at that time had a "possible cause of action." *Doe*, 692 N.W.2d at 406.

As the court found in *Bromley*, statements to explain away or convince the plaintiff that

nothing improper had occurred, even to children experiencing sexual abuse, does not

constitute fraudulent concealment. 2014 WL 667799, at *1 (allegations that a defendant

"convinced one of the plaintiffs that she was mistaken about what happened to her" did

not constitute fraudulent concealment). This finding conforms to the other child abuse

precedents. In *Doe*, the priest allegedly used the powerful and coercive force of religion

to explain that the abuse was not improper. The priest allegedly told the plaintiff that the

sexual abuse was "approved of by God." 692 N.W.2d at 407. Nonetheless, the court

found that fraudulent concealment was not applicable. In *Antos*, the plaintiff alleged

church officials "affirmatively misrepresented" the existence and nature of the sexual

misconduct, yet the court found that the plaintiff could not rely on fraudulent

concealment to toll the statute of limitations. 2005 WL 3050473, at *7.

Plaintiffs alleged that Defendants Nelson and Kantor told one Plaintiff, Plaintiff

Emmalee Forrester, "not to tell anyone because they did not want her to look bad."

(ECF No. 13, PageID.179.) But Plaintiff Forrester, unlike other Plaintiffs, discussed the

abuse at the time of the incidents with other Plaintiffs and made reports to the school

with other Plaintiffs. (*Id.*, PageID.177-79.) As alleged in the complaint, Plaintiff Forrester

was aware that there were multiple victims, knew the school was not rectifying the

problem, and, in "shock[] . . . that the school did nothing," told her mother and

grandmother of the abusive situation. (*Id.*, PageID.179.) Defendants' statements to

Plaintiff Forrester telling her, for her own good, not to publicly report the abuse did not

conceal the "possible cause of action" she had against Defendants, and fraudulent

concealment does not apply. *Doe*, 692 N.W.2d at 406. Words made to discourage reporting or to convince Plaintiff Forrester that nothing was wrong did not conceal from her that "a cause of action exist[ed] in [her] favor." *Id.* at 407 (quoting *Lemson*, 238 N.W.2d at 416); *see Bromley*, 2014 WL 667799, at *1; *Antos*, 2005 WL 3050473, at *7. Plaintiffs fail to cite a single case holding that a defendant fraudulently concealed the existence of a cause of action by telling an abuse victim not to report the abuse or by denying that the abuse took place. Furthermore, Plaintiffs cite no law supporting the contention that the court should reject *Doe*'s and *Antos*' explicit findings that "knowledge of [the] abuse of other children [is] not required for plaintiff to be aware of his causes of action."[5] *Doe*, 692 N.W.2d at 407; *Antos*, 2005 WL 3050473, at *2. Fraudulent concealment is a limited doctrine, and it does not apply to this case.

### C. Michigan's Sexual Assault Statute of Limitations

In 2018, Michigan extended its statute of limitations for cases involving criminal sexual conduct. Mich. Comp. Laws § 600.5805(6) states that a ten-year statute of limitations applies to "action[s] to recover damages sustained because of criminal sexual conduct." Mich. Comp. Laws § 600.5851b permits minors who were victims of criminal sexual conduct to commence actions years after they reach the age of majority. Plaintiffs argue, in passing, that even if the alleged abusive acts prior to October 7, 2017, cannot be tolled under the fraudulent concealment doctrine, the newly enacted statutes of limitations for criminal sexual conduct should apply. (ECF No. 36,

---

[5]     In fact, Plaintiffs fail to cite a case where fraudulent concealment has been successfully alleged.

PageID.520-21.) According to Plaintiffs, all claims after June 11, 2015 are not time barred under these Michigan statutes. (*Id.*)

Michigan's criminal sexual assault statutes of limitations do not apply to Plaintiffs' federal claims. The Supreme Court in *Wilson v. Garcia* explicitly rejected the argument that statutes of limitations for federal civil rights claims are derived from the "analogous cause of action under state law." 471 U.S.261, 271 (1985). As explained above, it is well established that in § 1983 actions, courts must "borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250 (1989); *accord Cooey*, 479 F.3d at 416. The same statute of limitations rules that apply to § 1983 claims also govern Title IX claims. *See Lillard*, 76 F.3d at 729 (holding that courts must apply "the state personal injury limitations period" to Title IX claims); *Dibbern*, 2016 WL 2894491, at *18 (using the same statute of limitations analysis for § 1983 and Title IX claims). In Michigan, it is well established that the general three-year statute of limitations for personal injury actions applies to federal civil rights claims. *Wolfe*, 412 F.3d at 714; *accord Garza*, 972 F.3d at 867 n.8. Michigan's specific statute of limitations for cases of criminal sexual assault do not apply to Plaintiffs' federal claims.[6] Thus, the federal

---

[6]      Although the Sixth Circuit has not specifically addressed state statutes of limitations for claims involving sexual abuse, numerous other circuits have held, in line with Supreme Court precedent, that only general or residual state statutes of limitations apply to federal civil rights claims. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761 (5th Cir. 2015) ("Plaintiffs' argument that [a] specific limitations period for sexual assault claims should apply over [a] general two-year period . . . is foreclosed by *Wilson* and *Owens*."); *Woods v. Ill. Dept. of Children and Fam. Servs.*, 710 F.3d 762, 768 (7th Cir. 2013) ("[T]he limitations period applicable to all § 1983 claims brought in Illinois is two years . . . and this includes § 1983 claims involving allegations of failure to protect from childhood sexual abuse."); *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 579-80 (9th Cir. 2012) (refusing to apply Oregon's child abuse statute of limitations in a § 1983 claim in favor of Oregon's residual two-year statute of limitations);

claims are barred to the extent they accrued prior to October 7, 2017, three years prior to when the complaint was filed.

For Plaintiffs' state claims, the parties dispute whether Michigan's revised statute of limitations for criminal sexual conduct can be applied retrospectively and thus cover the alleged abused in this lawsuit. (ECF No. 36, PageID.520-21; ECF No. 37, PageID.535.) On one hand, several Michigan courts have held that "[s]tatutes of limitations operate prospectively unless an intent to have the statute operate retrospectively clearly and unequivocally appears from the context of the statute itself." *Davis v. State Employees' Retirement Bd.*, 725 N.W.2d 56, 63 (Mich. Ct. App. 2006) (quotations removed); *Pryber v. Marriott Corp.*, 296 N.W.2d 597, 599-600 (Mich. Ct. App. 1980). On the other hand, other Michigan courts have noted that "a remedial or procedural act which does not destroy a vested right" can be applied retroactively, *Buhl v. City of Oak Park*, 942 N.W.2d 667, 674 (Mich. Ct. App. 2019) (quotations removed), and "statutes of limitations are generally regarded as procedural and not substantive in nature." *People v. Russo*, 439 Mich. 584, 487 N.W.2d 698, 702 (1992) (citing *Lothian v. Detroit*, 414 Mich. 160, 324 N.W.2d 9 (1982)) (retroactively applying a criminal statute of limitation for sexual assault of a minor); *People v. Chesebro*, 463 N.W.2d 134, 136 (Mich. Ct. App. 1990) ("Our Supreme Court has applied a statute of limitations retroactively where it related to a procedural matter in a pending case in which no rights have accrued under the prior statute.").

---

*Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993) (declining to apply a child sexual assault statute of limitations to a federal civil rights claim).

Plaintiffs' state law claims are brought under the court's supplemental jurisdiction. (ECF No. 13, PageID.143 ("Plaintiffs further invoke the supplemental jurisdiction of this Court.").) The complaint does not allege that the parties have diverse citizenship. Consequently, the court will decline to exercise jurisdiction over Plaintiffs' state claims and will dismiss them without prejudice.

A court may decline supplemental jurisdiction where "the claim raises a novel or complex issue of [s]tate law" or there are "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1), (4). In making this determination, the court considers several factors, including "the values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Resolution of the parties' dispute is dependent on whether Michigan courts would retroactively apply the recently enacted statute of limitations for criminal sexual conduct. Neither party cites a Michigan court that has analyzed or resolved the issue. *See Weser v. Goodson*, 965 F.3d 507, 519 (6th Cir. 2020) (holding that a claim presented a "novel issue of state law" where, "to the knowledge of both the parties and [the court], [the issue] has never been squarely addressed by [state] courts"). The question of retroactivity for claims alleging sexual assault of children is significant. The Michigan Legislature saw fit to overhaul its statute of limitations to provide sexual assault victims greater access to the legal system. The question of whether the statute of limitations applies is governed entirely by state law, and state courts are best equipped to resolve the dispute. *See Doe v. Sundquist*, 106 F.3d 702, 708 (6th Cir. 1997) (reasoning that a district court should decline supplemental jurisdiction where "[c]oncerns of comity" exist

that support allowing state courts to decide "purely state law issues"). Michigan courts can competently review their own precedents and definitively determine the effect of the recently enacted statutes. Such a decision will provide clarity for Plaintiffs and others who may consider bringing claims based on criminal sexual assault.

The court will also dismiss without prejudice Plaintiffs' state claims against Defendant Debandt. Plaintiffs allege claims against Defendant Debandt under ELCRA, the Due Process Clause of the Michigan Constitution, gross negligence, negligence, invasion of privacy, and assault and battery. The claims against Defendant Debandt and Defendant school district and administrators rely on many of the same facts, namely Defendant Debandt's alleged abuse of students, and Plaintiffs' claims likely have the same statute of limitations issues. Plaintiffs' § 1983 and Title IX claims involve unique bodies of law, and the remaining federal claims can proceed in this court without the confusion and added difficulty of applying conflicting legal standards.

Considering factors such as federal-state comity, judicial expertise, the need to avoid unnecessary resolution of novel and complex issues of state law, and fairness to the parties, the court will decline supplemental jurisdiction over Plaintiffs' state law claims.[7] *See Gamel*, 625 F.3d at 951. The claims will be dismissed without prejudice.

---

[7]     The court's dismissal of the state claims will not prejudice Plaintiffs under the applicable statute of limitations. Title 28 U.S.C. § 1367(d) states that "[t]he period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." Under § 1367(d), "the clock is stopped and the time is not counted—while the federal court is considering the claim and for thirty days after the claim is dismissed." *In re Vertrue Inc. Marketing and Sales Practices Litigation*, 719 F.3d 474, 481 (6th Cir. 2013) (quotations removed); *Artis v. District of Columbia*, 138 S. Ct. 594, 596 (2018) (Section 1367(d) "suspends the statute of limitations both while the claim is pending in federal court and for 30 days postdismissal."); *Puetz v. Spectrum Health Hospitals*, 919 N.W.2d 439, 448 (Mich. Ct.

Because Plaintiffs' federal claims against the Defendant school district and school administrators accrued at the time of the alleged abuse, Michigan's law of fraudulent concealment cannot toll the claims, and Michigan's criminal sexual conduct statute of limitations does not apply to the federal claims, any abusive acts that occurred prior to October 7, 2017, are time barred. (*See* ECF No. 21, PageID.368-70.)

## IV. CONCLUSION

The statute of limitations bars Plaintiffs' federal claims against Defendants Clarenceville School District, Shepich, Nelson, Kantor, Valentine, and Bergeron that arise from Defendant Debandt's abuse occurring prior to October 7, 2017. The federal claims of Plaintiffs Katelyn Estepp, Victoria Langlois, Taylor Seymour, Madison Bevak, and Shelby Underwood against the Defendant school district and school administrators are completely time barred, and those claims will be dismissed. The federal claims of Plaintiffs Forrester, Perry, Holly Messerschmitt, and Alyssa Craigie against the Defendant school district and school administrators survive, but only to the extent that such claims arise from abuse occurring after October 6, 2017. Plaintiffs assert one federal civil rights claim under § 1983 against Defendant Debandt. (ECF No. 13, PageID.185-89.) That claim is not the subject of the instant motion to dismiss and it survives.

---

App. 2018) (recognizing the binding effect of § 1367(d)'s tolling provisions). In addition, under Mich. Comp. Laws § 600.5856, all Michigan statutes of limitations are tolled "during the pendency of [Plaintiffs'] original lawsuit" in federal court. *Yeo v. State Farm Fire and Cas. Ins. Co.*, 618 N.W.2d 916, 916 (Mich. Ct. App. 2000); *Puetz*, 919 N.W.2d at 444 n.2 (quoting *Badon v. Gen. Motors Corp.*, 470 N.W.2d 436, 439 (Mich. Ct. App. 1991)) ("[I]f the plaintiff timely files a complaint in federal court, then—under MCL 600.5856—'the statutory period of limitation was then tolled until the federal action was no longer pending.'").

The court will dismiss Plaintiffs' state claims against all Defendants without prejudice to allow state courts to resolve the complex and novel issues of state law raised in this case. Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss (ECF No. 21) is GRANTED IN PART. The claims of Plaintiffs Estepp, Langlois, Seymour, Bevak, and Underwood against Defendants Clarenceville School District, Shepich, Nelson, Kantor, Valentine, and Bergeron under Title IX (Count I), bodily integrity (Count 2), failure to supervise (Count 3), and failure to train (Count 4) are DISMISSED.

IT IS FURTHER ORDERED that Plaintiffs' claims under ELCRA (Count 5), the Due Process Clause of the Michigan Constitution (Count 6), gross negligence (Count 7), negligence (Count 8), negligent supervision (Count 9), negligent failure to warn or protect (Count 10), negligent retention (Count 11), Michigan's Child Protection Law (Count 12), invasion of privacy (Count 13), and assault and battery (Count 14) are DISMISSED WITHOUT PREJUDICE.

s/Robert H. Cleland                          /<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated:  May 6, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 6, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                                /<br>
Case Manager and Deputy Clerk<br>
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-12727.FORRESTER.MotiontoDismiss.RMK.2.docx